710 S.E.2d 60

**Terrence EDWARDS, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 26977.**

Supreme Court of South Carolina.

Submitted Sept. 23, 2010.

Decided May 23, 2011.

Appellate Defender LaNelle C. DuRant, South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Ashley McMahan, all of Columbia, for Respondent.

Justice HEARN.

We granted certiorari to review the circuit court's denial of post conviction relief (PCR) to Terrence Edwards (Petitioner). Petitioner asserts the circuit court erred in finding his trial counsel's decision to not interview and call as a witness Petitioner's co-defendant was not deficient performance or prejudicial. We disagree.

## FACTUAL/PROCEDURAL BACKGROUND

An Abbeville County grand jury indicted Petitioner and Sergio Marshall on the following charges: (1) murder of Jonathan Blackston; (2) armed robbery of Blackston; (3) grand larceny of a motor vehicle; (4) possession of a firearm by a person under twenty-one years of age; and (5) possession of a firearm during the commission of a violent felony. Marshall pled guilty to all five charges. Petitioner proceeded to trial, during which he was represented by counsel. Prior to Petitioner's trial, defense counsel did not interview Marshall. Additionally, counsel did not call Marshall to testify during the trial itself.

The evidence introduced at Petitioner's trial showed Marshall shot Blackston twice, once in the head and once in the arm. At some point during the altercation, but before he died, Blackston also received strong blows to his face that were likely from a hand or a foot. Petitioner admitted to law enforcement he helped Marshall hide Blackston's body under a nearby pile of logs in the field where he was shot. Afterwards, Petitioner was found with cash from Blackston's wallet on his person, some of which he had already spent at the county fair, Blackston's wallet in the trunk of his car, and Blackston's breath spray hidden under his mattress. The Solicitor did not try Petitioner's case on the theory of principal liability, nor did he suggest that Petitioner was the shooter. Instead, he presented the case on the theory of accomplice liability based on the indisputable evidence of Petitioner's involvement in at least some aspects of the crimes. The jury returned a verdict of guilty on all five charges.[1] The court of

---

1. The circuit judge sentenced Petitioner to fifty-five years imprisonment, while Marshall received a total sentence of thirty-five years

appeals affirmed Petitioner's convictions on direct appeal. *State v. Edwards*, Op. No.2005–UP–256 (S.C. Ct.App. filed Apr. 7, 2005). This court denied certiorari to review the convictions.

In his PCR application, Petitioner alleged his attorney was ineffective for failing to interview Marshall and call him as a witness. To support his argument, Petitioner called three witnesses to testify at the PCR hearing: Marshall, Petitioner himself, and his attorney. Marshall testified that despite being the only surviving witness to the crimes other than Petitioner, he was not called as a witness during Petitioner's trial. Marshall also testified that had he been called as a witness during Petitioner's trial, he would have told the jury the shooting was an accident, he alone was the shooter, and Petitioner had no involvement in, and indeed was shocked by, the murder. During Petitioner's testimony, Petitioner accepted responsibility for some wrongdoing on the day of Blackston's murder but was steadfast in his denial of any participation in the murder itself. He further testified that he believed Marshall's testimony would have made a "big difference" at Petitioner's trial and he never told his attorney that he did not want Marshall to testify.

Petitioner's trial counsel admitted that he did not interview Marshall before Petitioner's trial. However, he was present at Marshall's guilty plea, giving him an opportunity to observe Marshall in court, and retained a copy of Marshall's plea transcript. During his plea, Marshall was consistent in his denial of Petitioner's involvement in the murder, but his version of the rest of the events changed no less than three times during his statement to the court. In fact, the plea court seemed poised to reject Marshall's plea as to the murder charge because he was unable to give a consistent recitation of the facts. It was only when he finally was able to do so—after being instructed to ignore any prior statements he made in

---

imprisonment following his guilty plea to the same offenses. Although we are troubled by the disparate sentences these co-defendants received from the same circuit judge, we have no power to address that disparity. *See State v. Franklin*, 267 S.C. 240, 246, 226 S.E.2d 896, 898 (1976) ("[T]his Court has no jurisdiction to review a sentence, provided it is within the limits provided by statute for the discretion of the trial court, and is not the result of prejudice, oppression or corrupt motive.").

court or to the police—that the court accepted his plea. According to Petitioner's attorney, this final version of the facts, highlighting the accidental nature of the crimes and Petitioner's lack of involvement, was wholly consistent with the version given to law enforcement by Petitioner and introduced at Petitioner's trial through the testimony of a SLED agent.

Defense counsel testified that his decision to not call Marshall was a strategic one he made for two reasons. First, he testified that he actually disagreed with Marshall's version of the facts presented at the plea hearing, stating, "[I]t wasn't an accident if he's pleading guilty to murder." Second, he expressed serious concerns about Marshall's ability to withstand cross examination by the Solicitor were he to testify. Although trial counsel did state that "in retrospect" and in "hindsight" he would want to reconsider calling Marshall, this belief had two important caveats: that Marshall's testimony at trial would be the same as it was at the PCR hearing and it would be tested with the same "limited cross-examination." However, he then went on to state that in reality there would have been "a lot of room on cross-examination" had Marshall actually testified at Petitioner's trial.

The PCR judge determined that the attorney's decision to not call Marshall was "a planned and calculated" one and "[o]nly in hindsight[ ] can the failure to call Mr. Marshall seem as an error." He also determined that Petitioner failed to establish any resulting prejudice from his attorney's actions. Accordingly, he denied and dismissed with prejudice Petitioner's application. We granted certiorari.

## STANDARD OF REVIEW

In reviewing a PCR court's decision, an appellate court is concerned only with whether there is any evidence of probative value that supports the decision. *Kolle v. State,* 386 S.C. 578, 589, 690 S.E.2d 73, 79 (2010). The appellate court will reverse the PCR court only where there is either no probative evidence to support the decision or the decision was controlled by an error of law. *Id.* In performing this analysis, the appellate court is to give great deference to the PCR court's findings of fact and conclusions of law. *Id.*

### LAW/ANALYSIS

■ In order to receive relief for ineffective assistance of counsel, a defendant must make two showings. First, he must show that his trial counsel's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, he must demonstrate that this deficiency prejudiced him to the point that he was deprived of a fair trial whose result is reliable. *Id.*

### I. Deficient Performance

■■ Counsel's performance under the first prong of the *Strickland* test is judged under the standard of "reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. This Court has stated previously that criminal defense attorneys have a duty to undertake a reasonable investigation, which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case. *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007); *see also McKnight v. State,* 378 S.C. 33, 46, 661 S.E.2d 354, 360 (2008) ("A criminal defense attorney has the duty to conduct a reasonable investigation to discover all reasonably available mitigation evidence and all reasonably available evidence tending to rebut any aggravating evidence introduced by the State.").

■ However, "[t]here is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard,* 372 S.C. at 331, 642 S.E.2d at 596 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). "[W]hen counsel articulates a *valid* reason for employing a certain strategy, such conduct generally will not be deemed ineffective assistance of counsel. The validity of counsel's strategy is viewed under an 'objective standard of reasonableness.'" *Lounds v. State,* 380 S.C. 454, 462, 670 S.E.2d 646, 650 (2008). The United States Supreme Court has cautioned that "every effort be made to eliminate the distorting effects of hindsight" and evaluate counsel's decisions at the time they were made.

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Accordingly, we must be wary of second-guessing trial counsel's tactics. *Whitehead v. State,* 308 S.C. 119, 122, 417 S.E.2d 529, 531 (1992).

 While our case law does provide that defense counsel must, at a minimum, interview potential witnesses, a strict adherence to that rule loses sight of the controlling standard for counsel's duty to investigate: reasonableness. Indeed, it would be an absurdity to require criminal defense lawyers to interview *every* potential witness when they can articulate reasonable grounds not to. When counsel makes such a reasonable decision, he will have fulfilled the duty he owes to his client. Petitioner would have this Court raise the duty to conduct a reasonable investigation to include creating "a simulated trial situation" for every witness, subjecting them all to mock cross-examination. Our case law has never required so much of defense counsel, and we decline to so extend it. So long as a defendant's attorney conducts a reasonable investigation, including interviewing potential witnesses when it is reasonable to do so, his performance will not be deficient. Other states are in accord. *See, e.g., Murray v. Griffith,* 243 Va. 384, 416 S.E.2d 219, 222 (1992) (finding counsel's failure to interview a particular witness not deficient where the witness's testimony would have been cumulative and witness himself could have been harmful to the defense); *Daniels v. State,* 296 Ga.App. 795, 676 S.E.2d 13, 18 (2009) (holding counsel's failure to interview witnesses did not amount to deficient performance where he had read their prior statements, reviewed the state's file in the matter, was experienced in trying similar cases, was familiar with the applicable law, and was not surprised by other evidence adduced at trial); *People v. Caballero,* 184 Mich.App. 636, 459 N.W.2d 80, 82–83 (1990) ("Even the failure to interview witnesses does not itself establish inadequate preparation. It must be shown that the failure resulted in counsel's ignorance of valuable evidence which would have substantially benefited the accused.").

 Although Petitioner's attorney admittedly did not interview Marshall, he did observe Marshall at the plea hearing. Based on this observation, counsel concluded as a strategic matter that he was not going to call Marshall as a witness.

Chief among the reasons for that decision were Marshall's ability to withstand cross-examination due to his prior vacillation and the cumulative nature of his testimony. Additionally, Petitioner's attorney knew entirely consistent evidence would be presented through Petitioner's statement to the police. A witness's credibility and demeanor is crucial to an attorney's trial strategy, and an attorney cannot be said to be deficient if there is evidence to support his decision to not call a witness with serious credibility questions, even if that witness is a co-defendant. *See Jackson v. State*, 329 S.C. 345, 351–52, 495 S.E.2d 768, 771 (1998) (holding counsel had a valid strategic reason for not calling a co-defendant as a witness where the co-defendant's credibility was a concern and the same evidence would be presented through another witness); *Stokes v. State*, 308 S.C. 546, 548, 419 S.E.2d 778, 779 (1992) (finding counsel's decision to not call witnesses reasonable where their testimony would have been of no value to the case and they made inconsistent statements in the past).

Given this Court's admonition against second-guessing counsel's trial strategy, Marshall's performance and the cumulative nature of his testimony provide probative evidence under our prevailing law to support the PCR court's determination that Petitioner's attorney articulated a valid trial strategy when he chose not to call Marshall as a witness. Because Petitioner's attorney had valid reasons for not calling Marshall to testify, it would be futile and unreasonable to also require defense counsel to interview him to satisfy the Sixth Amendment because doing so would serve no purpose in connection with Petitioner's defense. To achieve our goal of "eliminat[ing] the distorting effects of hindsight," we must disregard the attorney's statements that he would now reconsider calling Marshall. Focusing our attention on what Petitioner's counsel knew at the time he made his decisions to neither interview nor call Marshall, we find ample probative evidence to sustain the PCR court's ruling that he did not render deficient performance.

## II. Prejudice

Moreover, even were we to hold that Petitioner's counsel's performance was deficient, Petitioner suffered no prejudice. To establish the requisite prejudice necessary to

prove a claim of ineffective assistance of counsel, Petitioner must demonstrate that his attorney's errors had an effect on the judgment against him. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. A PCR applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. In other words, he must show that "the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052. We previously have held where evidence produced during PCR proceedings is cumulative to or does not otherwise aid evidence introduced at trial, no prejudice results from counsel's failure to bring it forward. *See Jackson,* 329 S.C. at 350–51, 495 S.E.2d at 770–71; *Glover v. State,* 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995); *Cherry v. State,* 300 S.C. 115, 118–19, 386 S.E.2d 624, 625–26 (1989).

Petitioner alleges that he was prejudiced because if the jury heard Marshall's testimony that Marshall was the lone gunman and Petitioner had no involvement whatsoever, there is a reasonable probability that the jury would have had a reasonable doubt as to Petitioner's guilt.[2] However, this argument belies the evidence that the facts proffered by Marshall at the PCR hearing are wholly consistent with the evidence presented at Petitioner's trial. As his attorney acknowledged, the statement Petitioner gave to the police, and introduced at trial through a SLED agent, details the purported accidental nature of the shooting and Petitioner's lack of involvement. The case before us today is not one where the proffered evidence would have exonerated Petitioner had it been presented. Instead, Marshall's testimony simply would have been cumulative to evidence already introduced through other witnesses. While Petitioner's attorney did believe that Marshall's testimony probably would have affected the jury's decision, that belief was premised on the conditions that the testimony

---

**2.** Petitioner also alleges that had this evidence been presented, the Solicitor would not have had the opportunity to argue to the jury that Petitioner was the shooter as opposed to Marshall. After a thorough review of the record, we find no evidence to support Petitioner's contention that the Solicitor argued Petitioner shot Blackston. Rather, the record clearly shows the Solicitor argued the case on a theory of accomplice liability, not principal liability.

would be the same as it was during the PCR hearing and subject to the same "limited cross-examination." However, counsel later conceded that he truly believed Marshall's testimony at Petitioner's trial would open the door for "a lot" of cross-examination, thereby seriously undermining the chance that the jury would have been persuaded by his story.

In *Jackson v. State*, 329 S.C. 345, 495 S.E.2d 768 (1998), we considered a set of facts strikingly similar to those before us today. In *Jackson*, the PCR applicant claimed his trial counsel was deficient for failing to call the applicant's co-defendants as witnesses. *Id.* at 350, 495 S.E.2d at 770. On appeal, the State challenged the PCR court's finding of prejudice resulting from this decision. *Id.* The evidence showed that counsel reviewed the co-defendants' statements, the co-defendants' version of the evidence was the same as the applicant's, and this evidence was presented separately at trial through the testimony of a police officer. *Id.* at 350, 495 S.E.2d at 770–71. In the end, counsel made the decision to not call the co-defendants because he "didn't want to run the risk of calling them and having something go wrong." *Id.* at 350, 495 S.E.2d at 771. This Court reversed the PCR court, finding there was no probative evidence of prejudice because the applicant failed to show that the proffered testimony would have provided the jury with any additional information. *Id.* at 351, 495 S.E.2d at 771. Here, Petitioner's counsel attended Marshall's plea and kept a copy of the transcript, Marshall's testimony was consistent with evidence already introduced at trial through a police officer, and the attorney had legitimate concerns about Marshall's performance as a witness.

While Marshall's statements may have served to corroborate Petitioner's testimony concerning the degree of his involvement in the crime, this benefit must be evaluated against the legitimate concerns regarding Marshall's credibility and the strong evidence of Petitioner's guilt. Those concerns run directly counter to the possibility that the jury would have reached a different result had Marshall testified. With that and our limited "any evidence" standard of review in mind, it is readily apparent from the record that there is probative evidence to support the PCR court's conclusion that Petitioner failed to establish the requisite prejudice for a claim of ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, we affirm the ruling of the PCR court.

TOAL, C.J. and KITTREDGE, J., concur. BEATTY, J., concurring in a separate opinion. PLEICONES, J., dissenting in a separate opinion.

Justice BEATTY.

I concur in result only. In my view trial counsel was clearly deficient in his representation of petitioner. Counsel's failure to call co-defendant as a witness is irrational. Co-defendant testified at his guilty plea that petitioner had nothing to do with the murder and was shocked by it. It is unreasonable to conclude that co-defendant's testimony would not have been very beneficial to petitioner. Moreover, in my view it is unreasonable to classify counsel's deficient performance as a reasonable trial strategy.

Defense counsel gave two reasons for his strategic decision not to call co-defendant as a witness. The first reason was that he did not believe codefendant's version of the facts because co-defendant gave several versions of the facts. However, neither version alleged that petitioner participated in the murder. The second reason was that he was concerned about co-defendant's ability to withstand cross-examination. Assuming that to be true, how does this concern outweigh the exonerating testimony of the only eyewitness to the crime? Further, trial counsel's deficient performance is not ameliorated by arguing that co-defendant's exonerating testimony was merely cumulative to evidence presented by a policeman. It should be noted that the policeman's testimony was not corroborative, it merely restated *petitioner's* statement given at time of arrest.

In my view, trial counsel's performance was clearly deficient. However, I concur in the result reached by the majority because I do not believe that the trial results would be different given the amount of circumstantial evidence against petitioner.

Justice PLEICONES.

I agree with Justice Beatty that trial counsel's performance was deficient, but unlike him, and the majority, I cannot agree there was sufficient circumstantial evidence that petitioner was an accomplice to murder such that I am confident that the jury's verdict would not have been affected by Marshall's testimony. Instead, in my view, the evidence that petitioner helped hide the victim's body, that he had the victim's wallet in his car, had spent some of the victim's money and still had some on his person, and had the victim's breath spray under his mattress is evidence that petitioner may have been an accessory after the fact, and circumstantial evidence that petitioner had engaged in an armed robbery, but not sufficient evidence of murder to find that conviction reliable.

I would grant petitioner post-conviction relief on the murder charge.