723 S.E.2d 610

**Joseph WALKER, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 4946.**

Court of Appeals of South Carolina.

Heard Oct. 5, 2011.

Decided Feb. 22, 2012.

228

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Mary S. Williams, and Robert D. Corney, all of Columbia, for Petitioner.

Appellate Defender Kathrine H. Hudgins, of Columbia, for Respondent.

FEW, C.J.

This is a post-conviction relief (PCR) action arising out of Joseph Walker's convictions for kidnapping and first-degree criminal sexual conduct. The circuit court granted Walker's PCR application based on trial counsel's failure to investigate a potential alibi witness and the cumulative prejudicial effect of three other alleged instances of deficient performance. We agree with the PCR court that trial counsel's performance regarding the alibi witness was deficient under the Sixth Amendment. However, we find the witness's testimony presented at the PCR hearing did not meet the legal definition of an alibi, and thus Walker failed to prove prejudice. We also find the PCR court erred in granting relief based on the cumulative effect of counsel's deficient performance. We reverse.

## I. Facts and Procedural History

The victim testified that on March 2, 2002, she sought a man's help in fixing her broken-down car at a BP gas station

in Denmark, South Carolina. The man fixed her car with a wire he purchased nearby for $30. The victim did not have enough money with her, so she told the man to follow her home so she could pay him. She said the man came into her house uninvited, blindfolded her, drove her to his house, and raped her throughout the night. Early the next morning the man blindfolded her again, drove her home, and threatened to kill her if she told anyone. The victim testified that a few hours after she got home, she drank a rum and coke to calm her nerves.

The victim identified a man in the surveillance videotape from the BP station as her assailant. The BP store manager then identified the man as Joseph Walker. Prior to this incident, the victim had never met Walker or been to his house. However, the police were able to match precisely the detailed descriptions the victim gave of her assailant's truck and house with Walker's truck and house. Walker was arrested on March 22, 2002, twenty days after the alleged crime. He submitted to a video interview with the police in which he claimed he was with his girlfriend, Robina Reed, on the night of the crime. Walker was convicted of first-degree criminal sexual conduct and kidnapping. The trial court sentenced him to concurrent terms of twenty-four years in prison. This court affirmed the convictions and sentences. *State v. Walker*, Op. No. 2004–UP–618 (S.C. Ct.App. filed Dec. 9, 2004).

In January 2005, Walker filed a PCR application alleging ineffective assistance of counsel. Walker argued trial counsel was ineffective because she did not (1) investigate Reed as an alibi witness, (2) ask for a continuance to await the written results of a DNA test, (3) cross-examine the victim about her alcohol use, and (4) cross-examine the victim and call other witnesses about the victim's conflicting statements as to the time of the incident.

Trial counsel testified at the PCR hearing that she watched the DVD of Walker's interview. In the interview, Walker referred to Reed numerous times and claimed he could not have committed the crimes because he spent the night with her on March 2, 2002. Specifically, Walker admitted he was at the BP station on March 2, but denied helping the victim fix her car. He said he left the BP station and went to see Reed

at Hardee's, where she worked as a manager. Walker said he then stayed at a friend's house until about 10:00 p.m., when he drove to Reed's house to spend the night.

Despite watching the DVD of the interview, trial counsel did not investigate Reed as a potential witness. At the PCR hearing, she claimed she thought her investigator was following up on Reed. Walker testified he told the investigator about Reed, and the investigator wrote Reed's name in the case file. Trial counsel said she did not know what, if anything, her investigator did to investigate Reed. She also testified she "was not aware of any claim that [Walker] was with anyone on" the night of the crime. The PCR court summed up trial counsel's knowledge of Reed as a potential alibi witness in the following question:

> The court: So, there is an interview tape of the defendant that says he was with ... Ms. Reed on the night of the incident. That name appears in the file, but we don't know what was done as far as finding out what Ms. Reed would or would not have said; is that correct?

> [Trial counsel]: Yes, your honor.

Reed testified at the PCR hearing that Walker was her boyfriend on March 2, 2002. She said Walker had a key to her house and spent most weekend nights with her. When asked if she and Walker spent the night together on March 2, 2002, Reed answered: "I guess I did." The judge asked Reed: "You're telling me that you spent—[Walker] was staying with you that first weekend in March of 2002." Reed answered "Yes." On cross-examination, however, she changed her answer as follows:

Q: 2002 is when y'all broke up?

A: Yea.

Q: You know the exact date?

A: No, sir.

Q: But you knew he was with you that night?

A: Huh?

Q: You knew he was with you on March 2?

A: Well, I know he was with me, but I can't say a particular date. No, I don't know what date y'all want.

Q: But you can't remember the date y'all broke up?

A: Right.

Q: Do you know what you were doing the night of March 1, 2002?

A: No, I can't go back that far.

Q: Well, that's just the day before when you said Mr. Walker was with you?

A: You said he was with me, but that's all I can say.

Q: So, you don't know what you were doing March 1, 2002?

A: We could have been together in 2002. I don't even know what day that was.

Q: But you don't know specifically?

A: Right, that's what I'm saying.

Q: But you know specifically right now what you were doing March 2, 2002?

A: No, I ain't said that.

Q: So, you don't know what you were doing March 2, 2002 that night?

The Court: Ma'am, do you know whether or not you were with this man over here Mr. Walker?

The Witness: I know we spent a lot of days together. I can't tell you no particular day.

Q: So you can't tell—

A: A particular day; right.

Q: You can't tell us you were with him March 2, 2002?

A: Right.

As to Reed's testimony, the PCR court found:

[Walker] and Reed had an intimate relationship that was ongoing at the time of the alleged incident.... [Reed] further testified that [Walker] was usually with her during the time frame of [the] incident. [Walker] testified that he had been spending many nights, and most, if not all, weekends with Reed prior to, and including, the date of the alleged incident.... While Reed's memory of specific dates is not perfect since it has been approximately five years since the incident, and approximately four years since the trial, her testimony corroborated that of [Walker].

... [T]he Court finds that the testimony of Reed at the PCR hearing was credible.

The jury would have weighed the credibility of the testimony of the witness, and it is reasonable to assume that the outcome of the deliberations may have been different had this witness testified in light of the facts of this case.

The PCR court granted Walker's application on two grounds. First, the court found the failure to investigate the alibi witness was deficient and prejudiced the defense. Second, the court found Walker

independently established a second ground for prejudice with the cumulative effect of Trial Counsel's error in her failure to investigate [the victim's] alcohol use, her failure to move to continue the hearing to await the written results of the forensic testing, her failure to cross-examine the witnesses as to the discrepancy of the conflicting times of the incident, and her failure to investigate or interview Reed, the combination of which prejudiced [Walker].

The judge explained that, standing alone, none of the first three instances of deficient performance established prejudice, but when they were added together with the failure to investigate Reed as an alibi witness, "[these] failures cumulatively prejudiced" Walker. The State appeals both grounds upon which the PCR judge granted the application.[1]

## II. Applicable Law and Standard of Review

To obtain post-conviction relief based on the alleged denial of effective assistance of counsel under the Sixth Amendment, the applicant must satisfy the two-prong test set out in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the applicant must show that trial counsel's performance was deficient based on a standard of " 'reasonableness under prevailing professional norms.' " *Edwards v. State,* 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). Second, the applicant "must demonstrate that this deficiency prejudiced him to the point that he was deprived of a fair trial

---

1. The State also contends the PCR court applied an incorrect standard by requiring counsel to articulate a trial strategy for each alleged instance of deficient performance. However, we do not read the PCR court's order to include such a requirement. We read the order as merely noting that trial counsel did not articulate a strategy in defense of her performance.

whose result is reliable." *Id.* To satisfy this second prong, the applicant "must demonstrate that his attorney's errors had an effect on the judgment against him." 392 S.C. at 458–59, 710 S.E.2d at 65. An error will be found to affect the judgment if the applicant proves " 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " 392 S.C. at 459, 710 S.E.2d at 66 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). "In other words, [the applicant] must show that 'the factfinder would have had a reasonable doubt respecting guilt.' " *Id.* (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052).

 An appellate court must affirm the factual findings of the PCR court if they are supported by any probative evidence in the record. *Cherry v. State,* 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). This court "will reverse the PCR court only where there is either no probative evidence to support the decision or the decision was controlled by an error of law." *Edwards,* 392 S.C. at 455, 710 S.E.2d at 64.

## III. Ineffective Assistance of Counsel—Alibi Witness

### A. First Prong of *Strickland*

 We agree with the PCR court's finding that trial counsel's failure to investigate Reed as an alibi witness was deficient performance. Counsel admitted she watched the DVD of Walker's interview. Therefore, she was aware of Walker's claim that he was with Reed on the night of the crime.[2] "[C]riminal defense attorneys have a duty to undertake a reasonable investigation, which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case." *Edwards,* 392 S.C. at 456, 710 S.E.2d at 64. The duty to investigate a potential witness is even more critical when the witness might provide an alibi. Accordingly, the Sixth Amendment requires that criminal defense attorneys thoroughly investigate potential alibi witnesses.

---

2. Walker never personally told trial counsel about Reed. However, trial counsel could not have watched the interview without knowing Reed was a potential alibi witness.

 Trial counsel did nothing personally to investigate Reed as a witness. Her claim that her investigator was exploring Reed's role in the case also does not satisfy her obligations under the Sixth Amendment. The duty to represent the client belongs to the lawyer. While it may be reasonable to allow investigators and paralegals to do some or all of the investigatory work, trial counsel has a duty to supervise the investigation, make sure it is completed, and familiarize herself with the results. Trial counsel's failure to adequately investigate Reed as an alibi witness under the circumstances presented in this case was unreasonable under prevailing professional norms, and therefore deficient performance under the Sixth Amendment.

The State points out, however, that the defense presented a theory that Walker and the victim had consensual intercourse and there was no rape. The State argues this was "a far better theory" than an alibi defense because an alibi would not have explained the victim's detailed and accurate description of Walker's house and truck. The State thus argues that trial counsel's failure to investigate Reed as an alibi witness is justified as a valid strategic decision. This argument mischaracterizes the role of strategy in the analysis of trial counsel's performance. If counsel had properly investigated the alibi defense, and then made an informed strategic decision not to pursue it, the State's argument would be persuasive. However, because trial counsel did not conduct an adequate investigation of the alibi defense, she could not have made an informed strategic choice.

In *Strickland,* the Supreme Court stated that

strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.... [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

466 U.S. at 690–91, 104 S.Ct. 2052; *see Council v. State,* 380 S.C. 159, 175, 670 S.E.2d 356, 364 (2008). Here, trial counsel articulated no reasonable basis for her decision not to inves-

tigate Reed as an alibi witness. Therefore, reasonable professional judgment does not support the limitation on the investigation. Moreover, such a decision could not have been reasonable professional judgment. Because an alibi is a complete defense to a criminal charge,[3] there is no conception of sound judgment that will permit trial counsel to choose not to investigate the testimony of a witness whom counsel has reason to believe could provide an alibi.

We find, therefore, that there is evidence to support the PCR court's ruling that Walker met the first prong of the *Strickland* test. We agree with the court's conclusion that trial counsel's performance was deficient because we find " 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *Edwards,* 392 S.C. at 456, 710 S.E.2d at 64 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

## B. Second Prong of *Strickland*

■ As to the second prong of *Strickland,* however, we find the PCR court's ruling that trial counsel's deficient performance prejudiced Walker was controlled by an error of law. To qualify as an alibi, a witness's testimony must account for the defendant's whereabouts during the time of the crime such that it would have been physically impossible for the defendant to commit the crime. *Glover v. State,* 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995). Reed's testimony at the PCR hearing did not meet the definition of alibi. Therefore, trial counsel's failure to present the testimony cannot form the basis of a finding of prejudice under *Strickland. Glover,* 318 S.C. at 498, 458 S.E.2d at 539–40.

This case is similar to *Glover.* There, the PCR applicant "argued trial counsel was ineffective for failing to contact several witnesses who could have testified [the applicant] was in Florida when the crimes were committed." 318 S.C. at 497, 458 S.E.2d at 539. One witness initially said he "believed" the applicant was in Florida, but then said he could not remember and "knew 'nothing.' " *Id.* The second witness testified the applicant was in Florida eleven hours before the crime was committed at a location only approximately six-and-a-half

---

3. *See State v. Robbins,* 275 S.C. 373, 375, 271 S.E.2d 319, 320 (1980).

238

hours away. 318 S.C. at 497–98, 498 n. 1, 458 S.E.2d at 539–40, 540 n. 1. The testimony of either witness would have made it less likely the applicant committed the crime. Nevertheless, the supreme court found "no evidence to support the PCR judge's finding of prejudice" because "neither witness's PCR testimony established an alibi defense." 318 S.C. at 498, 458 S.E.2d at 539–40. In support of its finding, the supreme court cited *State v. Robbins*, 275 S.C. 373, 271 S.E.2d 319 (1980) for the following proposition: "[S]ince an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." *Glover*, 318 S.C. at 498, 458 S.E.2d at 540.

We interpret *Glover* to establish a framework for analyzing an alleged failure to investigate an alibi witness. When a PCR applicant alleges trial counsel failed to investigate or present an alibi witness, the PCR court must make two findings to determine if counsel's deficient performance constitutes prejudice under *Strickland*. First, the court must find as a matter of law whether the witness's testimony meets the legal definition of an alibi. Second, the court must assess the witness's credibility. In making the first finding, the court must consider the entire record to determine what the testimony would have been if it had been presented at trial. The PCR court must consider the testimony as a whole, take it as true and credible, and view it in the light most favorable to the PCR applicant.

Analyzing Reed's testimony under the *Glover* framework, we conclude her testimony does not qualify as an alibi. Reed's testimony makes it less likely Walker is guilty. Taken as a whole, however, her testimony does not account for Walker's whereabouts on March 2, 2002, such that it was physically impossible that he committed the crimes. Although Reed began by saying Walker spent the weekend with her, she eventually said she could not specifically remember whether Walker spent the night with her on March 2. Even her specific testimony that Walker "was staying with [her] that ... weekend" does not foreclose the possibility that he arrived at her house on Saturday morning after committing the crimes on Friday night. Therefore, like the testimony of the two

witnesses in *Glover*, Reed's testimony does not establish an alibi because it leaves open the possibility that Walker is guilty.[4]

Because Reed's testimony does not meet the legal definition of an alibi, Walker failed to show a reasonable probability the result of the trial would have been different if trial counsel investigated and presented Reed's testimony. Therefore, the PCR court committed an error of law in finding that Walker satisfied the second prong of the *Strickland* test.

## IV. Ineffective Assistance of Counsel—Cumulative Prejudice

The PCR court found that trial counsel's performance was deficient in three additional instances. The PCR court determined that Walker had not independently met the prejudice prong of the *Strickland* test as to any one of these deficiencies. However, the court found that the cumulative effect of the three, combined with the failure to investigate the alibi, did satisfy the prejudice prong. We disagree. We find no evidence to support the PCR court's ruling that two of the instances were deficient performance. The other instance, which was deficient performance, and the failure to investigate Reed as an alibi witness have no cumulative prejudicial effect.[5] Therefore, the PCR court erred in granting relief.

### A. Continuance to Await the Written Results of a DNA Test

▇▇▇ The PCR court found trial counsel's performance was deficient because she did not ask for a continuance to wait for the written report from the South Carolina Law Enforcement Division showing that no DNA evidence linked Walker to the

---

4. Because Reed's testimony does not meet the legal definition of an alibi, it is not necessary to make the second finding.

5. "[W]hether the cumulation of several errors, 'which by themselves are not prejudicial, would warrant relief is an unsettled question in South Carolina.'" *Lorenzen v. State*, 376 S.C. 521, 535 n. 3, 657 S.E.2d 771, 779 n. 3 (2008) (quoting *Green v. State*, 351 S.C. 184, 197, 569 S.E.2d 318, 325 (2002)). As discussed below, we find it unnecessary to answer this question because Walker has failed to prove prejudice under any interpretation of the law.

crime. We do not find evidence in the record to support this finding.

SLED tested a "bite mark" with the victim's blood and found "no DNA profile unlike the victim." SLED did not release the written results of this analysis until a month after Walker's trial. However, both the assistant solicitor and trial counsel were aware of the test results before trial. The assistant solicitor testified at the PCR hearing that the verbal SLED report generally becomes available "much earlier" than the written report. The PCR court found counsel should have sought a continuance to wait for the written SLED report because she "could have shown [the report] to the jury in order to stress that the only evidence linking the Applicant to the incident was [the victim's] identification."

First, the victim's identification of Walker is not the only evidence linking him to the crime. The victim's descriptions of Walker's truck and house were detailed and accurate. Based on these descriptions, the State was able to argue persuasively that the victim was in Walker's house.

Moreover, the trial transcript shows that counsel did stress to the jury the results of the DNA test—that no DNA evidence was found linking Walker to the crime. On direct examination of the police officer assigned to the case, the officer admitted that no DNA evidence was found in Walker's house or truck. On cross-examination, the officer admitted that the rape kit was never sent to SLED for DNA testing, he was unable to collect any samples for DNA testing from Walker's house, and hairs collected from Walker's car were not sent to SLED. Accordingly, the SLED report would have been only marginally helpful to Walker because the contents of the report were made known to the jury through the testimony of the officer. Moreover, the report would have been offered to prove the truth of what is asserted in the report. Thus, the report would likely have been inadmissible hearsay. *See State v. Jennings,* 394 S.C. 473, 479, 716 S.E.2d 91, 94 (2011) (finding portions of a written report constituted inadmissible hearsay). Trial counsel's decision not to seek a continuance so that a marginally helpful and probably inadmissible report containing the same information counsel could

present to the jury in other forms is not deficient perform-
ance.

## B. Cross–Examination of the Victim on Alcohol Use

 The nurse who performed the victim's rape kit noted
that the victim told her she planned to attend "ETOH treat-
ment" [6] that week. The PCR court found trial counsel's
performance deficient because she did not investigate the
reference to "ETOH treatment" in the nurse's notes or the
smell of alcohol noted by the police. The court found trial
counsel's lack of an investigation was deficient because the
"only evidence linking [Walker] to [the victim] was [her]
identification of [Walker]" and counsel's failure "prevented the
jury from considering [the victim]'s credibility in her identifi-
cation of [Walker]." We do not find any evidence in the
record to support this finding.

As explained above, there is more evidence linking Walker
to the crime than the victim's identification. Additionally, the
jury was not prevented from considering the victim's alcohol
use on the day of the crime in assessing her credibility. The
record contains several instances of trial counsel bringing the
victim's alcohol use to the jury's attention. Counsel asked the
victim about beer she drank while at the assailant's house.
Counsel cross-examined the victim about the rum and coke
she drank when she got home on the morning of March 3,
2002. Counsel cross-examined the victim's cousin about the
victim bringing an alcoholic drink with her to the cousin's
house on March 3. Finally, counsel mentioned the victim's
alcohol use in her closing argument. Thus, the trial transcript
reflects that trial counsel investigated and brought to the
jury's attention, through cross-examination and in closing
argument, the victim's use of alcohol during and after the
incident, allowing the jury to consider how the alcohol could
have affected her credibility in identifying Walker.

 We recognize that the nurse's note shows more than
merely that the victim drank alcohol during and after the
crime. Rather, the reference to alcohol treatment paints the
victim as an alcoholic. However, evidence that the victim is an

---

6. ETOH is an abbreviation for ethanol and refers to alcohol and alcohol
abuse. Trial counsel knew this.

alcoholic is not admissible to prove she was intoxicated at a particular time. *See* Rule 404(a), SCRE ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."). While "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible under Rule 404(a)(2) in some circumstances, the victim's alcoholism is not a pertinent trait of character in this case. *See State v. Mizell*, 332 S.C. 273, 278, 504 S.E.2d 338, 341 (Ct.App.1998) ("[T]he 'prevailing view is that only pertinent traits—those involved in the offense charged—are provable.'" (quoting John W. Strong, *McCormick on Evidence* § 191 (4th ed.1992))).

Moreover, evidence of the victim's alcoholism is not admissible under Rule 608(a), SCRE, because it is not evidence of her character for truthfulness or untruthfulness. See Rule 608(a), SCRE ("The credibility of a witness may be attacked ... subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness."); *see also State v. Aleksey*, 343 S.C. 20, 34, 538 S.E.2d 248, 255 (2000) ("Narcotics offenses are generally not considered probative of truthfulness."). While evidence of a person's intoxication at a specific point in time may be admissible to show credibility, evidence that a person is an alcoholic is not.

## C. Cross–Examination on Conflicting Evidence as to the Time of the Incident

The PCR court found trial counsel's performance was deficient because she did not "adequately prepare for trial through her failure to call witnesses" whose testimony would have shown the victim initially stated she was at the BP station at night and then later stated she was there in the afternoon. The nurse's report states that the victim said "on 3/2/02 at approx 7PM, she was at a gas station and her car wouldn't start back up." The PCR transcript refers to a police incident report that says the victim recounted she stopped at the BP station "at approximately 8 P.M." The videotape from the BP station shows the victim was there at approximately 3:30 in the afternoon. At trial, she testified she was at the BP station in the afternoon while it was still light outside. Counsel had both reports in her case file, but did not

ask the victim about the conflicting times. The PCR court found counsel should have explored the discrepancy to place doubt in the minds of the jury as to whether the victim accurately identified Walker. We uphold the PCR court's finding of deficient performance in this respect because there is evidence in the record to support the finding.

### D. The Cumulative Effect of Counsel's Deficient Performance

██ We find two instances of trial counsel's deficient performance—her failure to investigate Reed as a potential alibi witness and her failure to cross-examine the victim or call witnesses to testify about conflicting evidence as to the time of the incident. To the extent the failure to investigate Reed as a potential alibi witness caused some prejudice, we have determined the prejudice did not rise to a level warranting relief under *Strickland.* As to the failure to bring out the victim's conflicting statements on the time of the incident, the PCR court found any prejudice resulting from that deficiency did not independently warrant relief under *Strickland.* Even if South Carolina did allow PCR based on the cumulative prejudicial effect of two or more instances of deficient performance,[7] Walker would still have to demonstrate "a reasonable probability that, but for [the cumulation of] counsel's unprofessional errors, the result of the proceeding would have been different." *Edwards,* 392 S.C. at 459, 710 S.E.2d at 66 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). We find he has not. These instances of deficient performance are unrelated to each other and neither one makes the other more prejudicial. Therefore, even if we could evaluate them together, there is no cumulative prejudicial effect that would warrant relief under *Strickland.*

### V. Conclusion

The judgment of the PCR court granting a new trial is

**REVERSED.**

THOMAS and KONDUROS, JJ., concur.

---

7. *See* footnote 5.