Martina R. PUTNAM, Petitioner,

v.

STATE of South Carolina, Respondent.

Appellate Case No. 2012-212396

Opinion No. 5408

Court of Appeals of South Carolina.

Heard October 13, 2015

Filed June 8, 2016

Rehearing Denied August 17, 2016

Appellate Defender Benjamin John Tripp, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Daniel Francis Gourley, II, both of Columbia, for Respondent.

LOCKEMY, J.:

In this post-conviction relief (PCR) action, Martina R. Putnam contends the PCR court erred in dismissing her application for PCR and finding trial counsel was not ineffective for failing to adequately prepare her case and call witnesses to testify in her defense. We affirm.

## FACTS/PROCEDURAL HISTORY

Putnam was charged with homicide by child abuse in the death of her thirteen-month-old son (the Victim). At trial, the State sought to prove Putnam willfully and unlawfully killed the Victim by abuse or neglect. Putnam attempted to shift suspicion to her husband, Patrick, and her older children—Sibling One, age nine, and Sibling Two, age six (collectively, the Children)—who were also in the house when the Victim's fatal injuries occurred.

When Putnam awoke on the morning of the Victim's death, Patrick and the Children were already awake; Patrick was in the kitchen preparing food, and the Children were playing outside. Putnam testified she fed the Victim breakfast, took him to the bathroom for his bath, and laid him on the bathroom floor. Putnam stated she went to the bedroom to get a towel and when she returned to the bathroom, the Victim was not moving and felt like a "rag doll" in her hands. Officer Gwen Herod of the Sumter County Sheriff's Office, who interviewed Putnam, testified that Putnam claimed she did not know how the Victim's injury happened and admitted she was the only person with the Victim during that time.

Officer Herod conducted a videotaped forensic interview with the Children. Her understanding was Sibling One had interacted with the Victim before Putnam did on the morning of the Victim's death. Officer Herod testified Sibling One said he picked the Victim up from his crib that morning before

going outside to play, hugged him, and then put him back in the crib. Additionally, Officer Herod stated Sibling One described picking the Victim up and holding him upside down by his feet two days before the Victim died. The trial court allowed this testimony after the parties stipulated to its admissibility. Outside the presence of the jury, trial counsel asked Officer Herod whether Sibling One reported seeing Patrick pick the Victim up in a similar manner. Without reviewing the videotaped interview, Officer Herod could not recall whether Sibling One said someone else also picked the Victim up by his feet. Trial counsel noted that in the videotaped interview, Sibling One described holding the Victim by his feet and went "into this whole process about how [Patrick] used to do this and how they would hold his head and everything else." The trial court ruled Sibling One's comments concerning Patrick's alleged conduct were inadmissible hearsay under section 17–23–175 of the South Carolina Code (2014) because Sibling One did not testify at trial and were beyond the scope of the stipulation.[1]

Outside the presence of the jury, trial counsel proffered Officer Herod's testimony that on the day the Victim died, Patrick allegedly threatened to kill her and another officer. Trial counsel argued Patrick's threat was relevant because it demonstrated Patrick, who had access to the Victim before Putnam awoke on the day he died, had a tendency to express violence. The trial court excluded the proffered testimony because the threat was not relevant.

To demonstrate Sibling One's propensity for violence, Putnam proffered testimony that while in foster care following Putnam's arrest, Sibling One kicked Sibling Two so hard that the kick left a shoe print on Sibling Two's chest. The trial court refused to admit the testimony under Rule 404(b), SCRE, and determined the testimony did not survive the

---

1. *See* § 17–23–175 (allowing the admission of an out-of-court statement of a child under twelve years of age when the statement was given in response to questioning conducted during an investigative interview of the child, the statement was recorded, the child is present to testify and is subject to cross-examination, and the trial court finds the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness).

analysis set forth in *State v. Gregory* [2] because it merely cast a bare suspicion of guilt on Sibling One.

The State presented testimony from three doctors who explained the Victim's medical history and injuries. Dr. Joel Sexton, the pathologist who conducted the Victim's autopsy, concluded the cause of death was a subdural hematoma resulting from an abusive head trauma like a shaking or impact injury and ruled the death a homicide. Dr. Sexton opined the Victim could have experienced a lucid period after his impact injury but before he lost consciousness; however, the other two doctors disagreed with Dr. Sexton's opinion. Dr. Sexton testified the Victim was born premature and suffered from delayed development. In addition, Putnam testified the Victim suffered from severe apnea, reflux, digestive problems, breathing problems, and retinopathy.

The jury found Putnam guilty, and the trial court sentenced her to twenty-five years' imprisonment. Putnam filed a direct appeal, and this court affirmed her conviction and sentence. *State v. Putnam*, Op. No. 2011–UP–526 (S.C. Ct. App. filed Dec. 2, 2011).

Putnam filed a PCR application. At the PCR hearing, Putnam asserted trial counsel provided ineffective assistance by failing to call Patrick and the Children to testify about the events occurring in their home on the day the Victim died. She contended if the Children had attended trial and the trial court had admitted the videotape of the Children's interviews, the interviews could have helped her case. At the PCR hearing, neither Patrick nor the Children testified, Putnam did not introduce evidence showing what Patrick and the Children would have testified at trial, and Putnam did not introduce the videotape or transcript of the Children's recorded interviews. Putnam also asserted trial counsel was ineffective for failing to call an expert to testify about the Victim's medical issues and the ways a premature infant can die from a hematoma without

---

2. 198 S.C. 98, 104–05, 16 S.E.2d 532, 534–35 (1941) (providing evidence demonstrating a third party's guilt "must be limited to such facts as are inconsistent with [the accused's] own guilt" and prohibiting "evidence which can have no other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another").

suffering child abuse. Putnam did not introduce any expert testimony at the PCR hearing.

The PCR court found trial counsel's investigation fell within reasonable professional norms and Putnam failed to demonstrate prejudice from trial counsel's failure to present additional witnesses. Accordingly, the PCR court denied Putnam's PCR application. This court granted certiorari.

**STANDARD OF REVIEW**

"In reviewing the PCR court's decision, [an appellate court] is concerned only with whether there is any evidence of probative value to support that decision." *Smith v. State*, 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006). This court "will reverse the PCR court only where there is either no probative evidence to support the decision or the decision was controlled by an error of law." *Edwards v. State*, 392 S.C. 449, 455, 710 S.E.2d 60, 64 (2011). This court gives great deference to the PCR court's findings of fact. *Dempsey v. State*, 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). "In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief." *Lorenzen v. State*, 376 S.C. 521, 528, 657 S.E.2d 771, 776 (2008). This court gives great deference to the PCR court's findings on matters of credibility. *Walker v. State*, 407 S.C. 400, 405, 756 S.E.2d 144, 146 (2014).

**LAW/ANALYSIS**

█ Trial counsel must provide "reasonably effective assistance" under "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

█ "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in a case." *Caprood v. State*, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). Under the two-prong test established in *Strickland*, to establish a claim of ineffective assistance of counsel, a PCR applicant must prove (1) counsel's performance was deficient and (2) the deficient performance prejudiced the applicant's case. *Leon v. State*, 379 S.C. 448, 450, 666 S.E.2d 260, 261 (Ct. App.

2008). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700, 104 S.Ct. 2052.

 Under the first prong of the *Strickland* test, "the burden of proof is upon [the] petitioner to show that counsel's performance was deficient as measured by the standard of reasonableness under prevailing professional norms." *Southerland v. State*, 337 S.C. 610, 616, 524 S.E.2d 833, 836 (1999). "[C]riminal defense attorneys have a duty to undertake a reasonable investigation, which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case." *Edwards v. State*, 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011). "[W]hen counsel articulates a valid reason for employing a certain strategy, such conduct generally will not be deemed ineffective assistance of counsel." *Lounds v. State*, 380 S.C. 454, 462, 670 S.E.2d 646, 650 (2008) (emphasis omitted). "The validity of counsel's strategy is reviewed under 'an objective standard of reasonableness.'" *Id.* (quoting *Ingle v. State*, 348 S.C. 467, 470, 560 S.E.2d 401, 402 (2002)).

 Concerning the second prong of the *Strickland* test, "[t]o establish the requisite prejudice necessary to prove a claim of ineffective assistance of counsel, [the p]etitioner must demonstrate that his attorney's errors had an effect on the judgment against him." *Edwards*, 392 S.C. at 45–59, 710 S.E.2d at 65. "A PCR applicant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 459, 710 S.E.2d at 66 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007). "A PCR applicant cannot show that he was prejudiced by counsel's failure to call a favorable witness to testify at trial if that witness does not later testify at the PCR hearing or otherwise offer testimony within the rules of evidence." *Dempsey v. State*, 363 S.C. 365, 369, 610 S.E.2d 812, 814 (2005). "The applicant's mere speculation what the wit-

nesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice." *Glover v. State*, 318 S.C. 496, 499, 458 S.E.2d 538, 540 (1995).

## A. Failure to Present Expert Testimony

Putnam argues the PCR court erred in dismissing her PCR application because trial counsel was ineffective for failing to call an expert witness to undermine the testimony of the State's experts that the Victim died from either violent shaking or a severe blunt trauma to the head. We disagree.

■ We find evidence in the appendix supports the PCR court's determination that trial counsel conducted a reasonable investigation concerning experts who might give testimony favorable to Putnam. Trial counsel testified at the PCR hearing that he spoke with Dr. Sexton several times before trial, and both Putnam and Dr. Sexton testified at trial about the Victim's developmental problems. Further, trial counsel explained one reason he did not retain an expert witness was that Dr. Sexton "made it very clear that he had seen it many times, and felt it was true in this case—not just possible, but probable"—that the Victim experienced a period of lucidity between the time of the injury and the time he lost consciousness. Trial counsel also explained one of the State's other expert witnesses, Dr. Richard Cartie, testified there was no period of lucidity, so the jury heard the doctors take different positions. Therefore, trial counsel determined he did not need to call another expert to provide the same testimony Dr. Sexton provided. Because trial counsel interviewed Dr. Sexton before trial and strategically chose not to call an expert witness to give the same testimony Dr. Sexton provided concerning a possible period of lucidity and the Victim's developmental problems, we find evidence shows trial counsel's performance was objectively reasonable.

■ In addition, we find evidence in the appendix supports the PCR court's finding that Putnam failed to demonstrate prejudice from trial counsel's decision not to call additional expert witnesses. Putnam did not present any expert testimo-

ny at the PCR hearing; therefore, her assertion that additional expert testimony might have changed the result of her case is merely speculative and insufficient to demonstrate prejudice. Accordingly, we find probative evidence in the appendix supports the PCR court's finding that Putnam failed to meet her burden of demonstrating trial counsel was ineffective and failed to show prejudice.

### B. Failure to Secure the Attendance of Patrick and the Children

 Putnam also argues trial counsel was ineffective for failing to secure the attendance of Patrick and the Children at trial, given that all three had clear opportunities to injure the Victim and trial counsel's sole theory of the case was the State could not prove beyond a reasonable doubt that Putnam—rather than another resident of the home—injured the Victim. We disagree because, although we find trial counsel's performance was deficient, Putnam failed to demonstrate how trial counsel's performance prejudiced her trial.

Trial counsel's failure to subpoena witnesses can constitute ineffective assistance of counsel under certain circumstances. For example, in *Martinez v. State*, our supreme court found trial counsel ineffective for failing to subpoena a witness who would have testified he saw the petitioner at a location other than the crime scene fifteen minutes before the conclusion of the crime. 304 S.C. 39, 40–41, 403 S.E.2d 113, 113–14 (1991). In *Martinez*, trial counsel testified at the PCR hearing that he would have called the witness if the witness had been present at trial, the witness's testimony might have been important, and one more piece of evidence might have made a difference in the verdict. *Id.* at 41, 403 S.E.2d at 113–14.

Both South Carolina and Tennessee have enacted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (the Uniform Act). *See* S.C. Code Ann. § 19–9–10 (2014); Tenn. Code Ann. § 40–17–201 (2012). The Uniform Act provides procedures for securing the testimony of material witnesses through the courts of states that have adopted it, and South Carolina's version of the

Uniform Act specifically provides the court requesting the witness may recommend "the witness be taken into immediate custody and delivered to an officer of this State to assure his attendance in this State." *See* S.C. Code Ann. § 19–9–70 (2014). Tennessee's version of the Uniform Act provides that in lieu of issuing a subpoena or summons, the Tennessee court may "order that the witness be taken into custody immediately and delivered to an officer of the requesting state." Tenn. Code Ann. § 40–17–205 (2012). The Uniform Act also prescribes penalties to ensure witnesses attend trials. S.C. Code Ann. § 19–9–100 (2014); Tenn. Code Ann. § 40–17–206 (2012).

We find trial counsel rendered deficient performance by failing to secure the Children's attendance at trial and no probative evidence supports the PCR court's contrary finding. Because the Children were not present at trial, the rule against hearsay prohibited Putnam from introducing their videotaped depositions, which included testimony that Sibling One saw Patrick hold the Victim upside down by his feet. The Children's absence also prevented Putnam from questioning them about the events occurring before Putnam awoke on the day of the incident. Both Children awoke before Putnam that morning, and Officer Herod testified Sibling One admitted entering the Victim's room that morning before going outside to play.

Trial counsel testified he subpoenaed the Children through Putnam's ex-husband, who had custody of the Children and lived in Tennessee, but the ex-husband refused to bring the Children to court. Trial counsel should have secured the Children's attendance using the Uniform Act, which was in effect in both Tennessee and South Carolina at the time of trial. If trial counsel had utilized the Uniform Act to secure the Children's presence at trial, a Tennessee court could have ordered the Children to be taken into custody immediately and delivered to an officer in South Carolina. Further, a Tennessee court could have imposed penalties to ensure the Children attended Putnam's trial in South Carolina. Because trial counsel failed to secure the Children's presence at trial, his performance was unreasonable under prevailing professional norms and therefore deficient.

 However, evidence supports the PCR court's finding that Putnam did not establish prejudice from trial counsel's failure to secure the Children's attendance at trial. Although Putnam asserted the Children's testimony "may have shown some sort of information that may have helped in some way" and may have provided the jury with a better understanding of "what was actually going on in the house at the time," that testimony was speculative and therefore insufficient to establish prejudice. The jury heard Officer Herod testify about two statements Sibling One made in his videotaped interview: first, that he picked the Victim up from his crib and hugged him on the morning of the incident before going outside to play; and second, that he picked the Victim up and held him upside down by his feet two days before he died. However, at the PCR hearing, Putnam did not introduce the Children's videotaped deposition, and the Children did not testify. Therefore, any other testimony of the Children—including Sibling One's alleged statement he saw Patrick hold the Victim by his feet— was merely speculative. Putnam also failed to establish the result of the trial would have been different if the Children had testified at trial. Therefore, we hold Putnam failed to show she was prejudiced by trial counsel's failure to secure the Children's presence at trial.

 Furthermore, we find probative evidence does not support the PCR court's determination that trial counsel's performance was not deficient based on his failure to subpoena Patrick to testify at trial. Trial counsel should have subpoenaed Patrick to ensure his attendance instead of relying on him to attend trial voluntarily. Trial counsel was in contact with Patrick before trial, and Patrick attended Putnam's bond hearing. Therefore, trial counsel could have served Patrick with a subpoena before trial. Because Putnam's defense was that Patrick and the Children were in the home and could have interacted with the Victim before she did on the day the Victim died, trial counsel should have subpoenaed Patrick to question him about his interaction with the Victim that morning. The fact Patrick changed his mind about attending trial "in the last few days" before trial, got in a truck, and "took off" out-of-state does not excuse trial counsel's failure to subpoena him before that time. Accordingly, trial counsel's

failure to subpoena Patrick was unreasonable under prevailing professional norms and constituted deficient performance.

However, evidence supports the PCR court's conclusion that Putnam did not demonstrate prejudice from trial counsel's failure to subpoena Patrick. First, although trial counsel hoped to introduce testimony regarding Patrick's alleged threats against law enforcement to demonstrate his violent nature, the trial court ruled such testimony was irrelevant to Putnam's guilt and was inappropriate under a third-party guilt approach. Putnam failed to demonstrate the trial court's decision would have been different had Patrick testified at trial. Second, because Patrick did not testify at the PCR hearing, any other testimony by Patrick was merely speculative and therefore insufficient to establish prejudice. Therefore, we hold Putnam failed to show she was prejudiced by trial counsel's failure to subpoena Patrick to testify at trial.

## CONCLUSION

Putnam received inadequate representation in her prior trial proceedings.[3] However, we are constrained by our standard of review to affirm the PCR court's order dismissing Putnam's PCR application because Putnam failed to demonstrate trial counsel's deficient performance prejudiced her trial. Based on the foregoing, the PCR court's order of dismissal is

**AFFIRMED.**

KONDUROS, J., and FEW, A.J., concur.

---

**3.** In that regard, we are concerned that PCR counsel—who knew of trial counsel's failure to secure Patrick's and the Children's presence at trial—failed to secure their presence at the PCR hearing or provide evidence of what their testimony would have been at trial. At the PCR hearing, for example, PCR counsel failed to present any depositions or the Children's videotaped interviews in an effort to establish trial counsel's deficient performance prejudiced Putnam's case.