# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Ruben Ramirez, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2015-002063

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Greenville County
The Honorable G. Edward Welmaker, Post-Conviction
Relief Judge

---

Opinion No. 27696
Heard November 7, 2016 – Filed January 5, 2017

---

## AFFIRMED IN PART AND REVERSED IN PART

---

Appellate Defender Wanda H. Carter, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General James Clayton Mitchell, III, and Senior Assistant Attorney General Karen Christine Ratigan, all of Columbia, for Respondent.

---

**JUSTICE HEARN:**   The issue before us is whether a severely mentally retarded individual should be afforded post-conviction relief (PCR) where his plea counsel failed to request an independent competency evaluation prior to his guilty plea. The PCR court denied relief, finding plea counsel was not deficient nor was Ramirez prejudiced by counsel's representation.   Although the court of appeals disagreed that plea counsel was not deficient, the court affirmed based on its application of the "any evidence" standard to the PCR court's prejudice finding. We now affirm in part and reverse in part, upholding the court of appeals' finding of deficiency but reversing its finding as to lack of prejudice to Ramirez.

## FACTUAL/PROCEDURAL BACKGROUND

Ramirez was sixteen years old when he was indicted for assault and battery with intent to kill, kidnapping, first-degree criminal sexual conduct with a minor, first-degree burglary, and lewd act upon a child.   Upon an order from the circuit judge, Ramirez was sent to the Department of Mental Health for an evaluation of his competency to stand trial.[1]

Dr. Mayank H. Dalal conducted the examination, basing his finding of competency on an hour and a half forensic interview with Ramirez and a review of victim statements, police reports, photographs, and Department of Juvenile Justice (DJJ) records.   According to Dr. Dalal's report, Ramirez denied having any history of medical or psychological problems.   Additionally, Ramirez indicated he was only in the eighth grade and received mostly C's and D's.   Dr. Dalal also noted

---

[1] The record does not reflect why the circuit judge ordered the examination. However, we note Section 44-23-410(A) of the South Carolina Code (Supp. 2016) states:

> (A)    Whenever a judge of the circuit court . . . has reason to believe that a person on trial before him . . . is not fit to stand trial because the person lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge shall:
> (1) order examination of the person by two examiners designated by the Department of Mental Health if the person is suspected of having a mental illness or . . .
> (2) order the person committed for examination and observation to an appropriate facility at the Department of Mental Health . . . .

Ramirez exhibited certain speech difficulties, had difficulty reading the words "solicitor," "evaluation," and "competency," and struggled to remember the name of his attorney. Moreover, despite acknowledging the serious nature of the charges against him, Ramirez believed he was only facing "up to a few years in [DJJ]."[2] Nevertheless, Dr. Dalal concluded Ramirez had "sufficient factual and rational understanding of the charges against him," and was therefore competent to stand trial. In reaching this conclusion, Dr. Dalal did not review any collateral sources, nor did he perform any psychological testing or consider a psychological diagnosis.

Following his review of Dr. Dalal's report, plea counsel requested that Ramirez undergo a psychological examination with Dr. Stephen M. Gedo. According to plea counsel, he sought a second opinion because he was concerned Ramirez did not fully understand the gravity of his offenses or the charges he faced. Dr. Gedo met with Ramirez five times, with each appointment lasting between three and four hours. In addition to a clinical interview, Dr. Gedo based his conclusions on a number of psychological tests, Ramirez's medical records, and collateral interviews conducted with Ramirez's family to obtain historical information Ramirez may not have been able to accurately convey due to his intellectual limitations. In particular, Dr. Gedo noted Ramirez had been mentally retarded from birth, did not begin speaking until he was seven years old, was diagnosed with Attention Deficit-Hyperactivity Disorder (ADHD) when he was nine, and had only completed eighth grade by the time he was sixteen.

Based on his observations, Dr. Gedo concluded Ramirez had poor judgment and an impaired ability to regulate his impulses. Dr. Gedo also found Ramirez to be highly malleable, easily confused, and suffering limitations across the entire range of cognitive function, resulting in severely limited language and reading comprehension skills. Furthermore, Dr. Gedo determined Ramirez had a general IQ level between thirty-one and forty-four, falling within the range of Severe Mental Retardation,[3] and was functioning at the intellectual level of a four to seven

---

[2] In fact, Ramirez had been charged as an adult, and was facing anywhere from fifteen years to life without parole in the Department of Corrections.

[3] For reference, "an IQ of approximately [seventy] or below" indicates "[s]ignificantly subaverage intellectual functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 49 (4th ed. 2000) [hereinafter DSM-IV].

year old child. In conclusion, Dr. Gedo diagnosed Ramirez with an adjustment disorder with mixed disturbance of emotions and conduct, severe mental retardation, and a Global Assessment of Functioning (GAF) score of thirty-five out of one hundred.[4] However, Dr. Gedo rendered no opinion as to Ramirez's competency to stand trial.

Ultimately, Ramirez pled guilty but mentally ill to all the charges. Both the Dalal evaluation and the Gedo report were submitted into evidence on the issue of whether Ramirez was mentally ill at the time the crimes were committed, but there was no request for a further competency evaluation. The circuit judge accepted Ramirez's plea, noting his "IQ level [was] as low as any [the judge had] ever seen." Ramirez was sentenced to concurrent twenty-year terms for all charges, except the lewd act on a minor for which the circuit judge imposed a consecutive fifteen year sentence suspended upon five years' probation for mental health counseling.

Ramirez did not appeal his conviction, but applied for PCR, arguing his plea counsel was deficient in failing to obtain an independent mental examination. At the PCR hearing, plea counsel testified that Ramirez was very naïve and he questioned whether Ramirez fully understood what was going on prior to and at the plea hearing. Plea counsel further admitted he should have moved to have Ramirez's competency reevaluated after comparing the Gedo and Dalal evaluations; however, he gave no explanation for his failure to do so. In addition to plea counsel's testimony, Ramirez presented the Dalal and Gedo reports and a few pages from the DSM-IV.

---

[4] The GAF score is a "judgment of the individual's overall level of functioning." DSM-IV, *supra* note 5, at 32. "The GAF scale is divided into [ten] ranges of functioning," and each range has two components: symptom severity and functioning. *Id.* "The GAF rating is within a particular decile if **either** the symptom severity **or** the level of functioning falls within the range." *Id.* (emphasis in original). However, "in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." *Id.* at 33. Ramirez's GAF score of thirty-five indicates he has "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., . . . child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* at 34.

The PCR court dismissed Ramirez's application, finding plea counsel was not deficient and Ramirez was not prejudiced by counsel's representation. On review, the court of appeals found the record established at least a reasonable probability Ramirez was incompetent at the time of his plea and held the PCR court's finding of no deficiency was unsupported by the evidence. *Ramirez v. State*, 413 S.C. 351, 369–73, 776 S.E.2d 101, 111–13 (Ct. App. 2015). Nevertheless, the court held it was constrained by the "any evidence" standard to affirm the PCR court's order because the Dalal report was probative evidence supporting the PCR court's finding as to prejudice. *Id.* at 372, 776 S.E.2d at 113.

This Court granted certiorari to review the court of appeals.

## ISSUE PRESENTED

Did the court of appeals err in applying the "any evidence" standard to affirm the PCR court's finding that Ramirez was not prejudiced as a result of plea counsel's failure to request an additional competency evaluation?

## STANDARD OF REVIEW

In reviewing a PCR court's decision, this Court will uphold the PCR court's findings if there is any evidence of probative value to support them. *Suber v. State*, 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007). However, if the PCR court's conclusions are controlled by an error of law or are unsupported by the evidence, this Court must reverse the decision. *Edwards v. State*, 392 S.C. 449, 455, 710 S.E.2d 60, 64 (2011).

When alleging ineffective assistance of counsel, a PCR applicant must satisfy the two-prong *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the applicant must establish plea counsel's performance was deficient. *Edwards*, 392 S.C. at 456, 710 S.E.2d at 64. Second, generally the applicant must demonstrate plea counsel's "deficient performance prejudiced the [applicant] to the extent that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Cherry v. State*, 300 S.C. 115, 117–18, 386 S.E.2d 624, 625 (1989) (quoting *Strickland*, 466 U.S. at 694). *But see Sellner v. State*, 416 S.C. 606, 612, 787 S.E.2d 525, 528 (2016) (holding petitioner was entitled to relief without needing to establish prejudice where plea counsel advised petitioner to plead guilty to an offense unsupported by the facts); *Jordan v. State*, 406 S.C. 443, 449, 752 S.E.2d

538, 541 (2013) (quoting *Staggs v. State*, 372 S.C. 549, 551–52, 643 S.E.2d 690, 692 (2007)) ("'[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice to obtain [post-conviction] relief.'"); *Lomax v. State*, 379 S.C. 93, 103, 665 S.E.2d 164, 169 (2008) (holding once petitioner demonstrated an actual conflict of interest she did not have to show prejudice, but was entitled to PCR).

When a PCR applicant raises issues of competency in the context of a plea proceeding, the two-prong *Strickland* analysis still applies; however, because of the nature of the claim, proof of deficiency of counsel is intertwined with prejudice. Specifically, when establishing *Strickland* prejudice in the context of plea counsel's failure to request a mental competency evaluation, "the [applicant] need only show a 'reasonable probability' that he was . . . incompetent at the time of the plea." *Jeter v. State*, 308 S.C. 230, 233, 417 S.E.2d 594, 596 (1992); *see also Matthews v. State*, 358 S.C. 456, 458–60, 596 S.E.2d 49, 50–51 (2004) (expanding the reasonable probability standard as the burden for proving both the deficiency of counsel and the prejudice prongs).

## LAW/ANALYSIS

Ramirez argues the court of appeals erred in affirming the PCR court's order pursuant to the "any evidence" standard of review. Specifically, Ramirez contends he presented sufficient evidence at the PCR hearing to establish a reasonable probability that he was incompetent at the time of his plea, and the PCR court erred in denying his application for relief.[5] Therefore, Ramirez argues the court of

---

[5] Ramirez attempts to bolster this argument by further asserting that the Dalal report was incomplete and lacked probative value to support the PCR court's conclusion with respect to prejudice. Thus, Ramirez contends the court of appeals misapplied the "any evidence" standard by relying on improper evidence to affirm the PCR court's order. We disagree with this portion of Ramirez's argument and find that, had an "any evidence" analysis been appropriate in this case, Dr. Dalal's evaluation would have been probative evidence to support the PCR court's order on the issue of prejudice.

appeals should have reversed without performing an "any evidence" analysis. We agree.[6]

The court of appeals held Ramirez's plea counsel was deficient in failing to obtain an independent competency evaluation, finding that the evidence did not support the PCR court's finding of no deficiency.[7] *Ramirez*, 413 S.C. at 369–70, 776 S.E.2d at 111. In particular, the court noted the Gedo report and plea counsel's own awareness of Ramirez's communicative and intellectual limitations should have prompted plea counsel to seek an additional competency examination. *Id.* Additionally, the court of appeals held plea counsel's decision to pursue pleas of guilty but mentally ill, as opposed to requesting another competency evaluation, was not a valid strategy. *Id.* at 370, 776 S.E.2d at 111–12. Moreover, the court held "there was *at least* a reasonable probability Ramirez was incompetent at the time of his pleas," based upon Dr. Gedo's report and plea counsel's testimony at the PCR hearing. *Id.* at 371, 776 S.E.2d at 112 (emphasis added).

Once a PCR applicant has established his counsel was deficient in failing to obtain a mental competency evaluation, he is entitled to relief if he demonstrates a reasonable probability that he was incompetent at the time he pled guilty. *Jeter*, 308 S.C. at 233, 417 S.E.2d at 596; *Matthews*, 385 S.C. at 459, 596 S.E.2d at 51; *see also Sellner*, 416 S.C. at 611, 787 S.E.2d at 527 (holding a PCR applicant demonstrates prejudice by showing "there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty") (internal quotations

---

[6] Initially we note there are no findings of fact contained within the PCR court's order to support its conclusion that Ramirez was not prejudiced by plea counsel's representation. As such, the court of appeals erred in upholding the prejudice finding under the "any evidence" standard of review. *See, e.g.*, *Marlar v. State*, 375 S.C. 407, 408–09, 653 S.E.2d 266, 266 (2007) ("[T]he PCR judge must make specific findings of fact and state expressly the conclusions of law relating to each issue presented. The failure to specifically rule on the issues precludes appellate review of the issues."). However, Ramirez has not argued this issue on appeal.

[7] Since neither party appealed the court's holding on this issue, it is the law of the case. *Hudson ex rel. Hudson v. Lancaster Convalescent Ctr.*, 407 S.C. 112, 119–20, 754 S.E.2d 486, 490 (2014) (holding that if a party fails to timely appeal a ruling by a lower court, that ruling becomes the law of the case).

omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Gallman v. State*, 307 S.C. 273, 276, 414 S.E.2d 780, 782 (1992).

Plea counsel was clearly on notice, not only from the Gedo report, but from his own interactions with Ramirez, that Ramirez suffered from severe mental retardation, was functioning at the level of a four- to seven-year-old, and had difficulty in comprehending the legal proceedings. Accordingly, we affirm the court of appeals' holding that Ramirez's plea counsel was deficient in not requesting an additional competency evaluation.

However, the court of appeals erred in affirming the PCR court's finding of no prejudice under the "any evidence" standard. As the court of appeals correctly noted, Dr. Gedo's report and plea counsel's testimony at the PCR hearing clearly established a reasonable, if not strong, likelihood that Ramirez was incompetent to plead guilty. Our opinions in *Jeter* and *Matthews* make it clear that when competency to enter a plea is at issue, a PCR applicant need only show there was a reasonable probability he was incompetent at the time of his plea. 308 S.C. at 233, 417 S.E.2d at 596; 385 S.C. at 459, 596 S.E.2d at 51. Once such a reasonable probability has been established, prejudice is also demonstrated. *See Matthews*, 385 S.C. at 459–60, 596 S.E.2d at 51. Therefore, since Ramirez has satisfied both prongs of the *Strickland* test, he is entitled to relief.

## CONCLUSION

We affirm the court of appeals' finding of deficient performance by plea counsel and reverse its holding that Ramirez was not prejudiced by that deficiency. Accordingly, Ramirez's plea is vacated and this matter is remanded to the court of general sessions.


**BEATTY, C.J., KITTREDGE and FEW, JJ., concur. Acting Justice Costa M. Pleicones, dissenting in a separate opinion.**

**ACTING JUSTICE PLEICONES**:  I regret that I am unable to join the majority opinion as I believe that our scope of review requires that we uphold the decision of the Court of Appeals' majority:  Dr. Dalal's finding that petitioner was competent is evidence of probative value that supports the PCR judge's finding that petitioner was not prejudiced by counsel's failure to obtain an independent competency evaluation. *Jeter v. State*, 308 S.C. 230, 417 S.E.2d 594 (1992).  In my opinion, however, it is shocking to the universal sense of justice to allow this severely mentally disabled individual's plea to stand, and I believe that were relief sought pursuant to *Butler v. State*, 302 S.C. 466, 397 S.E.2d 87 (1990), this Court would likely issue a writ of habeas corpus.

In light of our scope of review, I reluctantly dissent.