23962

Jerry SIMS, Petitioner v. STATE of South Carolina, Respondent.
(438 S.E. (2d) 253)

Supreme Court

*Harold R. Lowery,* Anderson, and *South Carolina Office of Appellate Defense,* Columbia, *for petitioner.*

*T. Travis Medlock, Atty. Gen., Joseph D. Shine, Chief Deputy Atty. Gen., Delbert H. Singleton, Jr., Asst. Atty. Gen.,* and *Lisa Godwin Jefferson, Asst. Atty. Gen.,* Columbia, *for respondent.*

Submitted June 11, 1993.

Decided Dec. 6, 1993.

TOAL, Justice:

This Court granted certiorari to consider PCR petitioner's direct appeal pursuant to *Davis v. State,* 288 S.C. 290, 342 S.E. (2d) 60 (1986).

## FACTS

Sims was indicted in Anderson County in July 1987 for the

murder of a young woman. At the conclusion of jury selection, a competency hearing was held by Judge James B. Stephen. After hearing the testimony of several expert witnesses and conducting a colloquy with Sims, the judge ruled that Sims was competent to stand trial. The defense asked for, and received, a recess to consult with Sims. Thereafter, Sims returned to the courtroom and entered a pleas of guilty but mentally ill of murder. Sims did not appeal his guilty plea or sentence.

In December 1989, Sims filed an application for postconviction relief alleging ineffective assistance of counsel at trial. On August 25, 1992, an evidentiary hearing was held in which it was determined that Sims was not competent to participate in the proceedings. The PCR judge also determined that trial counsel had not appealed the trial court's determination of competency or discussed the right to appeal with Sims. Sims' attorney motioned, without objection from the State, for the PCR court to consider ordering a direct appeal on behalf of Sims.

In an Order dated October 19, 1992, the PCR judge found that Sims had not knowingly and intelligently waived his right to a direct appeal, and that Sims should be afforded the opportunity for an appeal. *Wicker v. State,* — S.C. —, 425 S.E. (2d) 25 (1992); *Davis v. State,* 288 S.C. 290, 342 S.E. (2d) 60 (1986); *White v. State;* 263 S.C. 110, 208 S.E. (2d) 35 (1974). In addition, the PCR judge dismissed the allegations of ineffective assistance of counsel without prejudice because Sims was incompetent to assist his counsel in the PCR proceedings. This Court granted Sims' petition for certiorari to consider the direct appeal.

## LAW/ANALYSIS

The sole issue on appeal is whether the trial court erred in finding Sims competent to stand trial. The established test in South Carolina for determining a defendant's competency to stand trial is whether the defendant has the present ability to consult with his attorney with a reasonable degree of rational understanding. *State v. Bell,* 293 S.C. 391, 360 S.E. (2d) 706 (1987); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. (2d) 824 (1960). The defendant must have a rational as well as a factual understanding of the

proceedings against him. *Id; Carnes v. State,* 275 S.C. 353, 271 S.E. (2d) 121 (1980). As recently as last year, we reiterated the competency test in *State v. Davis,* — S.C. —, 422 S.E. (2d) 133 (1992) (affirming the trial court's determination of competency was based on defendant's capacity to understand the charges against him and their associated ramifications).

In a recent United States Supreme Court decision, *Godinez v. Moran,* — U.S. —, 113 S.Ct. 2680, 125 L.Ed. (2d) 321 (1993), the Court re-stated the test for competency as, "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.* at —, 113 S.Ct. at 2681. The Court observed that the aim of requiring a defendant to be competent was "to ensure that he has the capacity to understand the proceedings and to assist counsel." *Id.* at —, 113 S.Ct. at 2688. The established law of South Carolina adopts this approach by requiring the same two-part inquiry to be answered affirmatively prior to the commencement of trial.

The Court in *Godinez* rejected the Ninth Circuit view that some higher level of mental functioning was required to waive constitutional rights. *Id.* We agree with the Supreme Court's analysis, and note that there is no higher level of competency required at differing stages in the judicial process. If the defendant is competent enough to plead not guilty then it is only reasonable that the defendant is competent enough to plead guilty. The waiver of rights, the pleading of a defendant, and even execution of sentence necessarily require the same level of competency.[1]

The Supreme Court acknowledges that a finding of competency does not end the inquiry. There is a difference in the standards between competency and a knowing and intelligent waiver. The Supreme Court stated that the competency requirement, "is not all that is necessary before [a defendant] may be permitted to plead guilty or waive the right to counsel. In addition ... a trial court must satisfy itself that the waiver of constitutional rights is know-

---

[1] For now, we leave any discussion of the level of competency and the appropriate standard required for the execution of sentence in death penalty cases to our opinion in *Singleton v. State,* 437 S.E. (2d) 53 (S.C. Sup. Ct. 1993).

ing and voluntary." *Id.* at —, 113 S.Ct. at 2687.[2] While there is no distinction in levels of competency throughout the trial process, there is a distinction between the standard for competency and the standard to determine a knowing and voluntary waiver. *Id.*

In *State v. Law*, 270 S.C. 664, 244 S.E. (2d) 302 (1978), we held that a defendant's ability to assist in his defense was not hampered by the fact that he was administered medication during trial. While acknowledging that the medication affected the defendant's demeanor, emotional responses, cognitive skills, and ability to comprehend and communicate, we held that the positive effects from medication enabled the defendant to effectively assist his counsel. *Id.; see State v. Blair*, 276 S.C. 644, 282 S.E. (2d) 596 (1981) (affirming a finding of competency where the competency was accomplished through the administration of medication).

In the present case, the judge conducted an extensive hearing into Sims' competency. The trial judge was concerned that Sims appeared to be oblivious to the jury selection process. Based on this concern, the judge questioned the defense attorney to determine Sims' mental state and ability to assist in the defense. The attorney maintained that the medication, which was at the maximum dosage, rendered Sims unable to effectively consult and assist his attorney.

Three expert witnesses were called to testify concerning Sims' competency. Two of the doctors opined that Sims understood the charges, was able to communicate with his attorney, and understood the roles of the trial participants. Both of these doctors concluded that Sims was competent to stand trial while on medication. The third doctor, Dr. Dunlap, acknowledged that Sims understood the roles of the participants, and the charges which were brought against him. Dr.

---

[2] Sims attempts, in the alternative, to argue that his guilty plea was not a result of a knowing and voluntary waiver of his right to trial. Sims based this contention solely on the trial court's finding of competency at the time of trial. This argument is completely without merit. It is uncontested that Sims could function competently in one-on-one situations, and that Sims understood and communicated rationally with the trial judge in the colloquy associated with the guilty plea. There is no basis on the record to support anything other than finding of a knowing and voluntary plea.

Dunlap further felt that, in a one-on-one exchange with his attorney, Sims could assist in the defense. Dr. Dunlap parted company with his peers on the issue of whether Sims could understand what was happening outside of a direct one-on-one discussion. Dr. Dunlap's final analysis was not that Sims was incompetent, but rather that Sims' competency was "very questionable."

The experts' main point of contention was the medication dosage and its effect on Sims. Sims' expert asserted that the dosage of medication was excessive for the benefit gained. On the other hand, the State's expert witnesses testified that, since Sims had been off the medication for an extended period of time, a larger dosage was required to maintain competency.

Sims also testified. the defense brought out the dosage and effect of the medication being administered to Sims. Direct testimony was elicited about Sims' auditory hallucinations. From cross-examination questions, the trial judge was able to determine that Sims understood the charges against him, and the roles of the prosecutor, judge, jury, and defense attorney. The court found that while on medication, Sims was competent so long as he was involved in the proceedings on a one-on-one basis.

The trial judge equated the limitation on Sims for the medication to a language barrier. Testimony in the record indicated that Sims could participate in the examination of witnesses and elements of strategy through a one-on-one translation by the trial attorney. The judge found that the translation put Sims in the same position as a foreign language defendant who required a translation of testimony. Noting that extra time would be required for the trial, the judge fund Sims competent to stand trial. We agree.

Accordingly, for the reasons stated, the trial judge's finding of competency and acceptance of the guilty plea is AFFIRMED.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.