2102

The STATE, Respondent v. Jerry L. ROSIER, Appellant.

(439 S.E. (2d) 307)

Court of Appeals

*Robert G. Howe*, Charleston, *for appellant.*

*Attorney General T. Travis Medlock, Deputy Chief Atty. Gen. Donald J. Zelenka, Asst. Atty. Gen. Harold M. Coombs,*

*Jr.*, Columbia, and *Sol. Barbara R. Morgan*, Aiken, *for respondent.*

Heard Sept. 7, 1993.

Decided Dec. 13, 1993.

BELL, Judge:

Jerry L. Rosier was indicted for assault and battery with intent to kill. At a hearing held on May 18, 1992, Rosier pleaded guilty to this charge. At another hearing held on May 21, 1992, he moved to withdraw his guilty plea. The circuit court denied the motion and sentenced Rosier to twenty years in prison suspended upon service of ten years and five years probation. Rosier appeals the denial of his motion to withdraw the guilty plea prior to his sentencing. We affirm.

Prior to the May 18th hearing, Rosier's attorney, Howe, and Solicitor Gibbons discussed a plea bargain which would "cap" Rosier's sentence at ten years. Howe states he interpreted this to mean the sentence would not exceed ten years. This apparently is what Howe relayed to Rosier. The Solicitor testified that he understood the sentence would be twenty years with a cap of ten years on the suspended portion. The Solicitor further testified, however, that there was no mention in the discussion between him and Howe of a twenty-year sentence.

At the May 18th hearing, the circuit judge questioned Rosier and Howe about the plea and the plea bargain.

> THE COURT: Mr. Rosier, in this indictment it is alleged that you did commit an assault and battery with the intent to kill. . . . The penalty of punishment is up to twenty years in the discretion of the Court. Do you understand that charge and punishment?
> THE DEFENDANT: Yes sir.
> THE COURT: Understanding the charge and punishment, how do you wish to plead, not guilty or guilty?
> THE DEFENDANT: Guilty, Your Honor.
> THE COURT: Now, Mr. Howe and Mr. Gibbons, I understand that there is a recommendation from the State that this sentence not exceed the twenty years suspended with a cap of not to exceed ten years, and whatever pro-

bation the Court may order. Is that your understanding of the extent and nature of the plea bargain, Mr. Gibbons?

THE DEFENDANTS: Yes, Your Honor.[1]

THE COURT: Mr. Howe?

MR. HOWE: I believe it is, Your Honor. My understanding is the cap is ten years. Now how it would be suspended, I'm not familiar with that.

THE COURT: Well, twenty years suspended with a cap not to exceed ten on the suspended part, but it would be twenty hanging over his head.

MR. HOWE: Yes sir.

THE COURT: The suspended not to exceed ten years.

MR. HOWE: But the actual service could not be more than ten, yes sir.

THE COURT: On the twenty suspended on ten.

MR. HOWE: Yes, sir, I understand.

THE COURT: Now, Mr. Rosier, do you understand that?

THE DEFENDANT: Yes, sir.

On May 19th, Howe sent a letter to the Solicitor pointing out Howe's belief there was a misunderstanding concerning the plea bargain he and the Solicitor had worked out. A copy of this letter was sent to the circuit judge on May 20th. The record reflects the judge received this letter prior to the May 21st hearing.

The record further reflects that at the May 18th hearing, the circuit judge, prior to accepting Rosier's guilty plea, asked him he was under the influence of alcohol or drugs. Rosier replied, "No, sir." At the may 21st hearing, Howe told the circuit judge that after the May 18th hearing, Rosier told him that at the time he entered his guilty plea, he was under the influence of prescription medication.[2] According to Howe,

---

[1] The record indicates that Rosier answered this question, even though directed to Mr. Gibbons.

[2] The record reflects that Rosier was taking three different medications: Darvocet, Valium, and steroids. A deputy at the jail in which Rosier was incarcerated prior to the may 18th hearing testified that Rosier received the following medications prior to the May 18th hearing:

May 17th, 9:00 p.m.: one Diazepam (Valium)
May 17th, 10:37 p.m.: one Propoxyphene (Darvocet)
May 18th, 5:25 a.m.: one Propoxyphene (Darvocet)

Rosier believed the judge was referring to "street drugs" when he asked Rosier if he was under the influence of drugs.

1. Rosier first argues that his plea was not knowing and voluntary because he misunderstood the plea bargain and the possible resulting sentence. The main reason Rosier objected to the twenty-year sentence suspended upon service of ten is related to his parole eligibility. His attorney argued that with a twenty-year sentence suspended to ten years service, parole eligibility is based on the twenty years and not on the ten-year cap. On the other hand, if Rosier received a straight ten-year sentence, he would be eligible for parole sooner.

A guilty plea may not be accepted unless it is voluntarily and understandingly made. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. (2d) 274 (1969); *State v. Lambert*, 266 S.C. 574, 225 S.E. (2d) 340 (1976). Once a defendant enters a guilty plea, however, it is within the sound discretion of the trial judge whether to allow withdrawal of that plea. *State v. Riddle*, 278 S.C. 148, 292 S.E. (2d) 795 (1982).

The record amply supports the circuit court's finding that Rosier understood the plea bargain. In the passage quoted above, the judge stated no fewer than three times that the plea bargain was based on a twenty-year sentence with a ten-year cap on the suspended portion. When the judge asked Rosier if he understood this, Rosier responded, "Yes, sir." Howe also indicated, when asked by the judge, that he understood the plea bargain to be twenty years suspended with a cap not to exceed ten years on the suspended portion.

Moreover, even if Rosier misunderstood the plea agreement, the outcome would be no different. A court is not required to accept a plea agreement that has been reached by the State and the defendant. *Sartin v. Georgia*, 201 Ga. App. 612, 411 S.E. (2d) 582 (1991). Before imposing sentence, the circuit judge stated that he was not sentencing on the basis of the plea bargain, but rather was sentencing

---

May 18th, 6:37 a.m.: one Diazepam (Valium)
May 18th, 9:05 a.m.: two steroids
May 18th, 10:00 a.m.: one Propoxyphene (Darvocet)
May 18th, 12:55 p.m.: one steroid, one Diazepam (Valium)

The record does not reflect the time of the hearing on May 18th.

on Rosier's voluntary plea. It was within his discretion to do so.

2. Rosier also argues that he was under the influence of prescription medications which affected his ability to enter a knowing and voluntary plea.

In a law case tried without a jury, questions regarding the credibility and weight of evidence are exclusively for the court. *Sheek v. Crimestoppers Alarm Systems*, 297 S.C. 375, 377 S.E. (2d) 132 (Ct. App. 1989). The determination of credibility must be left to the trial judge who saw and heard the witnesses and is therefore in a better position to evaluate their veracity. *Id.*

The circuit judge observed Rosier at both the May 18th and the May 21st hearings. He determined Rosier was not so affected by medication that he did not know what he was doing and voluntarily entered his guilty plea on May 18th. The circuit judge stated that he did not believe Rosier's later testimony on May 21st and that Rosier was "faking" with the court. We see nothing that requires the court's findings in this regard to be set aside.

Accordingly, the circuit court's refusal to allow the guilty plea to be withdrawn is

Affirmed.

SHAW, J., concurs.

CONNOR, J., dissents in a separate opinion.

CONNOR, Judge (dissenting):

I respectfully dissent. I would reverse and remand.

The record reveals that both Rosier's attorney (Howe) and the Solicitor in charge of prosecuting Rosier (Gibbons) discussed a plea bargain in which Rosier would plead guilty to Assault and Battery with Intent to Kill (ABIK). Both attorneys agreed that the plea bargain sentence would be "capped at ten years." Howe argued that he interpreted the plea bargain to mean the sentence would not exceed ten years. This is apparently what Howe relayed to his client.

The day after the May 18 hearing and prior to the judge accepting the guilty plea, Howe sent the Solicitor a letter pointing out the misunderstanding about the plea bargain. A copy

of this letter was sent via facsimile to the trial judge on May 20. The relevant parts of that letter are:

> I received a call from Barbara Morgan around lunch time yesterday and thereafter called Judge Peeples who, in turn, called me and requested that I immediately travel to Barnwell, which I did arriving at approximately 5:30, having talked to the Judge at approximately 3:15. Ms. Morgan had said there was a possibility of a plea to assault and battery of a high and aggravated nature which carries a maximum of 10 years. When I arrived we discussed that, however, I was then told it would actually be a 10 year cap under the assault and battery with intent to kill statute. The first time I heard 20 years suspended on 10 was when the Judge discussed same at the plea. As you might remember, I simply told the Judge I understood there was a cap of 10. Obviously, 20 years suspended on 10 is far different from 10 years. . . .
>
> The 20 years suspended upon 10 years is not what we discussed and it is virtually identical to a 20 year sentence. Under a 20 years [sic] sentence, Mr. Rosier would be eligible for parole after approximately 6½ years. Under a 20 year suspended upon 10, he would be eligible in the same time or would max out his 10 year sentence in approximately 5½ years, if not 6. I discussed the 10 years with my client and the likelihood that he would be eligible after approximately 3 years and that was his understanding just prior to entering his plea, which was my understanding. . . .
>
> During the discussion between Ms. Morgan, myself, and you, the 10 year cap was to be identical to a plea to assault and battery of a high and aggravated nature which carries 10 years, other than the fact that the defendant would pull one-third as opposed to one-fourth before being eligible for parole. The crime itself is consistent with assault and battery of a high and aggravated nature, as opposed to intent to kill, however, I agreed to a 10 year cap to cut Mr. Rosier's exposure as there was a "possibility" that he might be found guilty of the more serious allegation. In any event, the posture of the case is obviously not was the 3 of us intended or discussed.

I apologize for the misunderstanding, however, the Judge's interpretation or understanding of what we agreed to is simply not what we agreed to.

The record reflects that the trial judge received Howe's letter prior to the may 21 hearing. At that hearing Howe moved to withdraw Rosier's guilty plea. The trial judge ruled that Rosier understood what he was doing when he pled guilty at the hearing on May 18, and denied Rosier's motion to withdraw his plea. The following discussion occurred between the trial judge, the defense attorney, and the solicitor:

> MR. HOWE: . . . [I]t's sort of a two-fold problem that I have with my client or we have.
>
> My understanding was a 10-year cap of a sentence. My understanding was 10 years was what the man would get. He tells me, Mr. Rosier, . . . that if he gets 20 years suspended upon 10, he would be eligible for parole based on the 20, . . . he would be eligible after a third. The third would be based on the 20. That would be approximately six years and seven months.
>
> THE COURT: Mr. Howe, you're welcome to put in this record your understanding of the release mechanism.
>
> MR. HOWE: Yes, sir.
>
> THE COURT:—On a 20-year A.B.W.I.K. as opposed to a 10 A.B.H.A.N. or 20 suspended on 10. I would have no comment as to when his parole eligibility would be. I think I have a pretty good understanding of what it is, but I have been reversed several times.
>
> \* \* \* \* \* \*
>
> THE COURT: I have been reversed by the Supreme Court indicating when someone would be eligible for parole, so this court denies to comment on that which you state as to when he should be eligible or not eligible. That's between you, your client, and the Department of Corrections.
>
> \* \* \* \* \* \*
>
> MR HOWE: . . . The first I heard of any 20 years with a suspension of 10 years was when I came into the courtroom. My understanding with Solicitor Gibbons—and I welcome any comment he would have on that—was that

it was a 10 year cap and that it was a 10-year sentence. . . . He [the solicitor] said, "Well, we'll cap it at 10 years." That was my understanding.

\* \* \* \* \* \*

(Mr. Gibbons, [the solicitor] being first duly sworn, testified as follows:)

THE COURT: State for the record and the court that which was your understanding relative to any plea bargain between you and Mr. Howe and Mr. Rosier.

MR. GIBBONS: Your honor, the extent of our conversation was that we were going to charge him with assault and battery with intent to kill, a 10-year cap on the jail sentence. That's the extent.

THE COURT: Was there any discussion with him that it would be the 20 years and then the cap of the ten?

MR. GIBBONS: No, your honor, there was not, either way. *I interpreted it to be the 20. He must have interpreted it to be the 10.* [Emphasis mine.]

\* \* \* \* \* \*

MR. HOWE: . . . [B]asically my basis would be that my understanding was not exactly what transpired. . . . Mr. Rosier tells me that he wishes to withdraw his plea, the first being that perhaps he didn't totally understand— whether it was my inadvertence or not, he didn't totally understand the amount of time he was facing. . . .

THE COURT: Well, the court will take judicial notice that if you didn't properly advise him of the time that he would have to serve under what I made clear on the record, you were derelict in your professional duties as a lawyer, and it should be reported as a grievance committee.

MR. HOWE: Yes sir.

THE COURT: Note that in the record, please, ma'am . . . .

MR. HOWE: Yes, sir. Well, that would be our position. What I would ask the court to do is if you would let this young man withdraw his plea, I would . . . be glad to try this case whenever the court—

THE COURT: Absolutely not. Denied. . . .

Rosier argues that he misunderstood the plea bargain arrangement, and the resulting sentence. As disclosed by the record quoted in the majority opinion, when asked about the plea bargain at the May 18 hearing, Mr. Howe told the judge that he was not familiar with how the sentence would be suspended. The principal reason Rosier objects to the twenty-year sentence suspended to the service of ten is that his parole eligibility is affected.

The imposition of a sentence may have a number of collateral consequences and a guilty plea is not rendered involuntary in a constitutional sense if the defendant is not informed of the collateral consequences. *Brown v. State*, 306 S.C. 381, 412 S.E. (2d) 399 (1991). Parole eligibility typically is a collateral consequence of sentencing about which a defendant need not be specifically advised before entering a guilty plea. *Id.* However, if he is *misinformed* of his parole eligibility, he must be allowed to withdraw his plea. In *Brown*, the Supreme Court allowed the defendant to withdraw his plea because the judge had misinformed him of his parole eligibility. The Court emphasized that while a trial judge has no duty to advise a defendant of the parole consequences of accepting a certain plea, if a judge affirmatively misinforms a defendant of certain parole consequences, then the plea is not knowing and voluntary.

There is no real difference in a judge misinforming a defendant about parole consequences and an attorney doing the same, especially if the judge knows the defendant is under a misconception. The trial judge knew, if not at the May 18 hearing, then certainly by the May 21 hearing, about the confusion surrounding this guilty plea. The knew that Howe had informed Rosier that he and Gibbons had agreed to a ten-year sentence. The fact that the court is not bound to accept the sentencing recommendation does not change the outcome under these circumstances. The obvious confusion surrounding the guilty plea is more than enough to make it an unknowing and involuntary plea. The trial judge, therefore, abused his discretion when he refused to allow the defendant to withdraw his guilty plea under these circumstances.

Accordingly, I would reverse the order of the trial judge and remand.