# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Brandon Garren, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2015-000756

---

## ON WRIT OF CERTIORARI

---

Appeal from Pickens County
Eugene C. Griffith, Jr., Post-Conviction Relief Judge

---

Opinion No. 27794
Submitted September 27, 2017 – Filed April 25, 2018

---

## REVERSED

---

Attorney General Alan Wilson and Assistant Attorney
General Ruston W. Neely, both of Columbia, for
Petitioner.

Appellate Defender David Alexander, of Columbia, for
Respondent.

---

**JUSTICE KITTREDGE:** Respondent Brandon Garren pled guilty to assault and battery of a high and aggravated nature (ABHAN) and criminal domestic violence of a high and aggravated nature (CDVHAN) in connection with a series of brutal attacks on his live-in girlfriend (Victim). He was sentenced to concurrent prison

terms of fifteen years and ten years, respectively.  No direct appeal was taken.  Garren then filed an application for post-conviction relief (PCR).  The PCR court granted relief, finding plea counsel was ineffective for failing to obtain a competency evaluation prior to Garren's guilty plea and that Garren's plea was involuntary due to his use of medication.  We reverse and reinstate Garren's guilty plea and sentence.

## I.

In January 2012, the Pickens County Sheriff's Office responded to a call and found Garren screaming at the Victim with a pistol in his pocket.  The Victim was crying and had visible injuries.  The Victim stated Garren repeatedly struck her and swung an ax at her head, barely missing her.  The responding officers found an ax on the premises and saw a hole in the wall which the Victim indicated occurred when Garren swung the ax at her head.  The Victim also indicated Garren had pointed the gun at her when she called law enforcement.

Thereafter, in June 2012, the Sheriff's Office responded to another call, this time from neighbors, who heard the Victim screaming and noticed the Victim outside, badly beaten and partially clothed, wandering in the yard while holding her pants.  The Victim told deputies she and Garren had been apart, but Garren picked her up and held her against her will for a week, threatening to kill her if she left and beating her repeatedly over the last two days.

This attack began in the bathroom, where Garren forced unknown pills down the Victim's throat and asked her if she wanted to die.  Then Garren submerged the Victim in the bathtub and told her that he was authorized, as her husband, to beat her.  Garren tied up the Victim and dragged her throughout the house, beating her with golf clubs, wine bottles, a medicine cabinet, a toaster oven, a lantern, and a belt, all of which were recovered from the scene.  The Victim believed she was going to die, so she encouraged Garren to take some pills, which eventually caused him to pass out.  At that point, the Victim grabbed her clothes and tried to escape, but she could not see due to her facial swelling, and she was found wandering along a fence by neighbors who heard her screams and called police.

The Victim's injuries were extensive.  Her eyes were swollen shut and her face was severely beaten, with broken bones requiring multiple facial reconstructive surgeries.  She had blood and glass throughout her hair, and her hair had to be cut off to remove the debris.  The Victim also required dental reconstructive surgery to

replace the teeth knocked out during the attacks, and she underwent neurological evaluations due to the extreme nature of her injuries and resulting trauma. When law enforcement arrived, the Victim was transported to the Intensive Care Unit in Greenville.

As a result of these incidents, Garren was charged with attempted murder, kidnapping, CDVHAN, and pointing and presenting a firearm, and Garren retained counsel to represent him. Garren faced up to a total of eighty-five years in prison—up to thirty years each for the attempted murder and kidnapping charges; up to twenty years for the CDVHAN charge; and up to five years for the firearm charge. *See* S.C. Code Ann. § 16-3-29 (attempted murder); *id.* § 16-3-910 (kidnapping); *id.* § 16-25-65(B) (CDVHAN); *id.* § 16-23-410 (pointing and presenting). Following plea counsel's negotiations with the State, Garren entered a "straight up" guilty plea to CDVHAN and the lesser charge of ABHAN. The more serious charges (and the firearm charge) were dropped.

During the plea proceeding, the assistant solicitor stated "[the victim's] face was beaten worse than any woman's face I've ever seen. I've never seen anything like that." Garren informed the plea judge that he understood the offenses to which he was pleading guilty; the constitutional rights, as enumerated by the plea judge, that he was waiving; and the possible sentences that could be imposed. Garren stated he had discussed his situation with plea counsel and that he was "most satisfied" with counsel's services. Notably, Garren confirmed he was not under the influence of any drugs or alcohol and that no one promised him anything or forced him to plead guilty.

During the plea hearing, plea counsel told the judge that Garren suffered from various physical health problems and that Garren "obviously has some mental problems." Counsel claimed that at the time of the incidents, both Garren and the Victim abused prescription medications and that Garren had "little" memory of the incidents. However, counsel explained that since entering the detention facility, Garren was much improved, as he had "gotten off pills" and gained weight— almost fifty pounds.

Plea counsel asked the plea court to consider a three- to five-year sentence with five years' probation and substance abuse treatment; however, the plea court found "[t]his case is beyond [the] pale" and sentenced Garren to concurrent prison terms of fifteen years for ABHAN and ten years for CDVHAN. No direct appeal was taken.

Garren filed a PCR application alleging counsel was ineffective for failing to request a mental health evaluation and that Garren's guilty plea was rendered involuntary as a result of medications he was given while in jail which impaired his ability to understand the plea proceedings. Specifically, Garren alleged:

> Due to being in a state of lethargy from medication given to me by the [P]ickens County Jail which was mind altering, and the result of medical treatment being given me by the Cancer Center of the Carolinas, The combined effects rendered me unable to, or incompetent to enter a plea.

Garren nevertheless failed to offer at the PCR hearing any evidence as to the specific medications and dosages he was administered at the Pickens County jail while awaiting trial and during the time period immediately prior to his guilty plea.

At the PCR hearing, plea counsel testified that Garren initially faced several serious charges and that the photographs depicting the Victim's extensive facial injuries were "devastating" to Garren's case. Plea counsel testified that he negotiated a reduction in charges, as well as a plea offer from the State for a total of fifteen years, which Garren rejected.

Plea counsel testified that there was no indication Garren had any mental health issues at the time of the plea that necessitated further evaluation. Plea counsel explained that he never saw the need for Garren to undergo a competency evaluation, but that he was bothered by the length of the sentence Garren ultimately received. It is abundantly clear from the record that counsel was anticipating a different plea judge. As plea counsel testified, Garren was expected to appear before a different plea judge in the morning, but Garren was not transported from jail until the afternoon. Counsel stated he firmly believed that "the switch in judges . . . added something to [Garren's] sentence. I can't say how much. But I think it did add something." Counsel stated Garren came from "a great family" and explained that, in hindsight, based on the actual sentence received:

> I really wish that we had taken the time to get a psychological evaluation. Because while I did, at that time, believe him to be competent[,] and I continue to believe he is competent, I believe there are some psychological issues that would have *mitigated his*

*punishment* and *materially affected the sentence* that he got.  And I really regret that I did not do that.

(emphasis added).

When asked if Garren seemed confused or "out of it" at the plea proceeding, counsel stated Garren's affect is always "a little bit spacey" but Garren nevertheless appeared to follow everything that was happening, and at no time did Garren indicate he did not understand what was going on.

Garren's testimony was similar to counsel's, as he, too, focused on the length of his sentence.  Garren testified that he was unhappy with his sentence, specifically claiming he believed he was going to receive a sentence of two to five years, plus probation, but that fell through when he "got the wrong judge."  Garren admitted that plea counsel never promised Garren he would receive a two- to five-year sentence.  And the plea judge, in a thorough guilty plea colloquy, explained the potential sentence Garren was facing.

While it is manifest the focus of Garren's PCR is the length of his sentence, he may not challenge a lawful sentence merely because he was hoping for a more lenient one.  Garren, of course, understands that, and he has postured his PCR on the basis that his plea counsel was ineffective for failing to request a competency evaluation.  Garren is uncertain whether he ever requested a competency evaluation, but he thinks his mother may have asked for one.  Garren's mother did not testify at the PCR hearing, and Garren offered no evidence of what a mental health evaluation would have shown had one been sought prior to his guilty plea.

As to the voluntariness of his guilty plea, Garren claimed he did not understand or have any recollection of the plea proceeding itself—including that he informed the judge his plea was not induced by any promises or threats and that he was not under the influence of alcohol or drugs.  As to the issue of medication, Garren testified on direct examination:

> Q:  Now, I know you've raised some issues in regards to your case. And one of them is dealing with medication and the effects on you regarding—understanding what was going on.  Can you go into some detail about that?

A: I don't know what kind of medication they was giving me in the county. But they have a way of giving medication that's—they have a bunch of little glasses on a tray. And they just give you medicine. I don't know if they give me the wrong medicine or what they done. But I had a reaction two different times to that medicine they give me.

Q: Okay. Have you at any time ever had a mental evaluation?

A: No, sir. They never did have me one for — while I was in the county the whole time.

Q: Okay. Do you think that — did you want one, or ever request one or talk to [plea counsel] about that?

A: I think my mother had requested to get one.

Q: Okay, I guess —and what I'm trying to understand, did you understand what you were doing on the day you pled guilty?

A: No, sir.

Q: Okay. Did you ever explain that to [plea counsel], or have a conversation with him about, I don't know what I'm doing, what I'm pleading guilty to or any of that?

A: [Plea counsel] told me that he wouldn't never represent me again when he come into the courtroom that day — I meant into the hallway. I reckon that was where it's at.

Garren testified further on cross-examination:

Q: Okay. So you don't recall one way or the other about what [you and plea counsel] talked about?

A: The only thing I really recall is how I got the transcript of the trial and read it myself. That's the only way I can remember what happened.

. . .

    Q. Okay. So you don't remember anything about the guilty plea itself.

    A. No, ma'am.

    Q. Okay. So you don't remember telling the judge that no one had made any promises to you? You don't recall that?

    A. No, ma'am

    Q. And do you recall [ever] telling [plea counsel] that morning that you just didn't understand what was going on, or you just don't recall?

    A. [Plea counsel] come in the hallway and told me he wasn't never going to represent me again.

    Q. Okay. So you recall that conversation with [plea counsel], you just don't remember anything else about the plea?

    A. That's it.

This testimony was the only evidence Garren offered in support of his claim that his plea was affected by medication. Although Garren's PCR application identified his medical records as further support for this claim, Garren did not offer into evidence his medical records or any information indicating he took medication *on the day of the plea* or identifying the type, dosage, or potential mind-altering effects of the medication(s) which he claimed rendered him incompetent to enter a guilty plea. Further, Garren offered no testimony or other evidence indicating that he would not have entered a guilty plea but for the influence of medication.

Nevertheless, the PCR court granted relief, concluding plea counsel was deficient for failing to seek a competency evaluation before Garren pled guilty and finding that Garren's guilty plea was entered involuntarily due to "the influence of medication which affected [Garren's] ability to understand what he was doing on the day of his plea." This Court granted the State's petition for a writ of certiorari to review the PCR court's decision.

## II.

This Court will uphold the findings of the PCR court when there is any evidence of probative value to support them. *Caprood v. State*, 338 S.C. 103, 109–10, 525 S.E.2d 514, 517 (2000). However, this Court will reverse the PCR court's decision when it is controlled by an error of law or unsupported by the evidence. *Edwards v. State*, 392 S.C. 449, 455, 710 S.E.2d 60, 64 (2011).

The State now argues this Court should reverse because there is no evidence in the record to support the PCR court's findings that (1) counsel was ineffective in not obtaining a competency evaluation; and (2) that Garren was unable to understand the plea proceeding due to medication. We agree and reverse.

### A.

"There is a two-prong test for evaluating claims of ineffective assistance of counsel. First, a PCR applicant must show that his counsel's performance was deficient such that it falls below an objective standard of reasonableness." *Suber v. State*, 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Alexander v. State*, 303 S.C. 539, 541, 402 S.E.2d 484, 485 (1991)). "Second, an applicant must show there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687; *Alexander*, 303 S.C. at 541–42, 402 S.E.2d at 485).

"A guilty plea is a solemn, judicial admission of the truth of the charges against an individual; thus, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed." *Dalton v. State*, 376 S.C. 130, 137, 654 S.E.2d 870, 874 (Ct. App. 2007) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, where a thorough colloquy is conducted, courts must exercise caution in setting aside the guilty plea. *See Jamison v. State*, 410 S.C. 456, 469–71, 765 S.E.2d 123, 129–30 (2014) (observing that "guilty plea[s] must be treated as final in the vast majority of cases" and instructing that caution must be exercised so as not to "undermine the solemn nature of a guilty plea and the finality that generally attaches to a guilty plea").

"[W]hen establishing *Strickland* prejudice in the context of plea counsel's failure to request a mental competency evaluation, the applicant need only show a

reasonable probability that he was incompetent at the time of the plea." *Ramirez v. State*, 419 S.C. 14, 21, 795 S.E.2d 841, 845 (2017) (internal marks omitted) (quoting *Jeter v. State*, 308 S.C. 230, 233, 417 S.E.2d 594, 596 (1992)); *see Matthews v. State*, 358 S.C. 456, 458, 596 S.E.2d 49, 50 (2004) ("Due process prohibits the conviction of an incompetent defendant, and this right may not be waived by a guilty plea.") (citing *Jeter*, 308 S.C. at 232, 417 S.E.at 595–96); *see also id.*, 308 S.C. at 232, 417 S.E.2d at 596 ("The test of competency to enter a plea is the same as required to stand trial. The accused must have sufficient capability to consult with his lawyer with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceedings against him." (citations omitted)).

As to the deficiency prong of the *Strickland* analysis, the State correctly argues that there is no evidence in the record that plea counsel's failure to seek a competency evaluation fell below an objective standard of reasonableness. To the contrary, plea counsel testified that, based on his interactions with Garren, a competency evaluation was unnecessary; that counsel believed Garren was competent at the time of the plea; and that he continued to believe Garren was competent. *Compare Jeter*, 308 S.C. at 232–33, 417 S.E.2d at 596 (finding counsel acted reasonably in relying on his own perceptions of a defendant's competency), *with Ramirez*, 419 S.C. at 22–23, 795 S.E.2d at 845–46 (finding plea counsel was deficient in failing to seek an independent competency evaluation where plea counsel was "clearly on notice" the defendant had mental health issues based on his own personal interactions with the defendant, as well as a previous psychological evaluation identifying several mental health issues). Because the record contains no evidence to support a finding that counsel's decision not to seek a competency evaluation fell below reasonable professional norms, the PCR court erred in finding counsel was deficient.

Likewise, there is no evidence in the record to support the PCR court's findings as to the prejudice prong of the *Strickland* analysis. Garren presented no evidence to demonstrate a reasonable probability that he would have been found incompetent to enter a guilty plea had a competency evaluation been conducted. *Cf. Glover v. State*, 318 S.C. 496, 498–99, 458 S.E.2d 538, 540 (1995) (holding prejudice from trial counsel's failure to procure and present evidence cannot be shown where the omitted evidence is not presented at the PCR hearing). Indeed, without *any* proof that Garren suffered from identifiable mental health issues that undermined his competency to plead guilty, any claim of prejudice is purely speculative. *See id.* (observing mere speculation and conjecture by the applicant is insufficient to

establish the allegation that counsel's deficient performance resulted in prejudice); *Jeter*, 308 S.C. at 233–34, 417 S.E.2d at 596 (explaining that an applicant asserting counsel was ineffective in failing to procure a mental evaluation must show there is a reasonable probability that he would have been determined to be incompetent at the time of the plea).  There is no evidence to support the PCR court's prejudice finding.

**B.**

The State further claims the PCR court erred in finding Garren's guilty plea was entered involuntarily as a result of Garren's medications, which he claimed impaired his ability to enter a voluntary guilty plea.  We agree.

Before a defendant may plead guilty, it must be established that the defendant is competent and that the defendant's decision to plead guilty is a knowing and voluntary one.  *Sims v. State*, 313 S.C. 420, 423–24, 438 S.E.2d 253, 254–55 (1993) (citing *Godinez v. Moran*, 509 U.S. 389, 398–01 (1993)).  The test for competency is the same whether a defendant pleads guilty or goes to trial—namely, "whether the defendant has the present ability to consult with his attorney with a reasonable degree of rational understanding" and the requirement that the defendant "have a rational as well as a factual understanding of the proceedings against him."  *Id*. at 422–23, 438 S.E.2d 254.

"The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings."  *Godinez*, 509 U.S. at 401 n.12 (citing *Drope v. Missouri,* 420 U.S. 162, 171 (1975) (observing that a defendant is incompetent if he "lacks the *capacity* to understand the nature and object of the proceedings against him") (emphasis added)).  "The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced."  *Id*. (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)).

"That the plea be voluntary is not only a requirement of due process, but a premise of the defendant's meaningful participation in the plea process."  *United States v. Savinon-Acosta*, 232 F.3d 265, 268 (1st Cir. 2000) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).  "Common sense, backed by ample case law, suggests that medication can in some circumstances affect a defendant's mental state to a degree that undermines the defendant's ability to enter a voluntary plea."

*Id*. "The critical question is whether the drugs—if they have a capacity to impair the defendant's ability to plead—have in fact done so on this occasion." *Id*. (citing *Miranda-Gonzalez v. United States*, 181 F.3d 164, 166 (1st Cir. 1999)) (holding that the plea court, upon learning a defendant has recently taken medication, should conduct an inquiry "to identify which drugs a defendant is taking, how recently they have been taken and in what quantity, and (so far as possible) the purpose and consequences of the drugs in question").

If a PCR applicant claims his guilty plea was involuntary due to the influence of medication, he must show "that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights, and of realizing the consequences of his plea." *United States v. Truglio*, 493 F.2d 574, 578 (4th Cir. 1974) (quotation marks and citation omitted). A PCR court must consider "objective data" about the nature and effect of the medication the defendant had taken and evaluate whether such medication "had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea." *United States v. Damon*, 191 F.3d 561, 565 (4th Cir. 1999) (recognizing that not all medication will influence a defendant's mental state to the point that the guilty plea must be invalidated) (citation omitted).[1] "The dispositive feature of this inquiry is whether the medication is in fact causing such an impairment." *United States v. Caramadre*, 807 F.3d 359, 368 (1st Cir. 2015).

"In a PCR action, the petitioner bears the burden of proof and is required to show by a preponderance of the evidence he was incompetent at the time of his plea."

---

[1] The dissent characterizes our reliance upon *Truglio* and *Damon* as being misplaced, portraying these cases as being procedurally distinguishable and underpinned by Rule 11 of the Federal Rules of Criminal Procedure. Our inquiry, however, is substantive rather than procedural in nature. Indeed, "[t]he question of an effective waiver of a federal constitutional right in a [plea] proceeding is of course governed by federal standards." *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Because Rule 11 embodies procedural safeguards designed to ensure compliance with substantive standards established by the United States Constitution, we find *Truglio* and *Damon* to be persuasive. *See McCarthy*, 394 U.S. at 465 (observing Rule 11 "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary" (footnotes omitted)).

*Jeter*, 308 S.C. at 232, 417 S.E.2d at 596 (citing Rule 71.1, SCRCP). "In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing." *Suber*, 371 S.C. at 558, 640 S.E.2d at 886 (citation omitted).

Nothing in the guilty plea transcript suggest Garren was under the influence of drugs or otherwise dispossessed of his mental faculties at the time the guilty plea was entered. To the contrary, Garren informed the plea court, under oath, that he was *not* under the influence of any drugs or alcohol.[2] Likewise, plea counsel testified at the PCR hearing that, at the time of the guilty plea, Garren's affect was not unusual and that Garren appeared to understand the proceedings, never saying or doing anything to suggest otherwise.[3] Indeed, the only evidence in the record supporting Garren's claim is his own PCR testimony that he was given some unidentified medication at some point while he was in jail and that he did not recall or understand the plea proceedings.

Even under our deferential standard of review, this testimony alone is insufficient to establish that Garren's guilty plea was entered involuntarily.[4] Garren's testimony establishes, at most, that Garren was administered one or more unknown medications in jail at some unknown point in time prior to pleading guilty. These vague assertions fall short as a matter of law. *See Sims*, 313 S.C. at 424, 438 S.E.2d at 255 (observing that certain medications enhance, rather than diminish, a defendant's "demeanor, emotional responses, cognitive skills, and ability to

---

[2] We note some courts find this dispositive. *United States v. Rivera*, 191 F. App'x 309, 311 (5th Cir. 2006) (refusing to consider documents and medical evidence contradicting defendant's sworn statements during plea colloquy that he was not under the influence of any medications at the time of the plea).

[3] *See United States v. Hardimon*, 700 F.3d 940, 943 (7th Cir. 2012) (observing a "combination of deeply confused or clouded thinking with coherent speech and normal demeanor is rare").

[4] The dissent's position is anchored on this Court's highly deferential standard of review. While we acknowledge the deference owed the PCR court, deference to a credibility finding is not the issue. The lack of evidence is. Even if we defer to implicit credibility findings, as urged by the dissent, there is zero evidence in the record to support the PCR court's finding that Garren's guilty plea was *influenced* by any type of medication.

comprehend and communicate"); *see also Weeks v. State*, 341 S.W.3d 701 (Mo. Ct. App. 2011) ("The mere ingestion of drugs is insufficient to render a person incapable of pleading guilty, and the recent ingestion of drugs does not invalidate a plea of guilty where the ability of the defendant to understand and give free assent to the conviction remain unimpaired.").

Indeed, the record is utterly devoid of any evidence that Garren had taken any medication *on the day he pled guilty* or that he was, as the PCR court found, "under the influence of medication which affected his ability to understand what he was doing on the day of his plea." Absent any evidence that Garren's ability to understand the guilty plea proceeding was diminished by the mind-altering effects of one or more specific medications, Garren has failed to meet his burden of proving his plea was constitutionally infirm, and his claim fails as a matter of law. *See, e.g.*, *Anderson v. United States*, 865 F.3d 914, 920 (7th Cir. 2017) (finding a defendant's statement that he was taking unspecified psychotropic drugs, without additional information about "exactly *what* drugs [the defendant] was on, and how they affected his cognition," was an insufficient basis for the court to evaluate the defendant's competency to enter a plea); *United States v. Carter*, 795 F.3d 947, 951–55 (9th Cir. 2015) (rejecting a defendant's claim that his guilty plea was entered involuntarily where he failed to "explain how the medications at issue would have impacted his ability to enter a plea knowingly and voluntarily"); *United States v. Yang Chia Tien*, 720 F.3d 464, 470 (2d Cir. 2013) (characterizing the lack of information as to the potential effects of medications a defendant had taken and whether those medications could impact the defendant's understanding of the proceedings as a "critical omission"); *Miranda-Gonzalez v. United States*, 181 F.3d 164, 165 (1st Cir. 1999) (explaining "[w]hen, as now, a defendant wishes to have his plea declared invalid due to his use of prescription medication or illicit drugs, the mere fact that [he] took potentially mood-altering medication is not sufficient to vitiate his plea. Rather, he must show that the medication affected his rationality." (internal citations, alterations, and quotation marks omitted)); *United States v. Browning*, 61 F.3d 752, 754–55 (10th Cir. 1995) (placing the onus on a defendant to demonstrate that the medication in question affected his "ability to think or comprehend" and rejecting the claim that his guilty plea was involuntary due to medications in light of "the complete absence of evidence that his ability to enter a knowing and voluntary plea was affected by the medications"); *United States v. Dalman*, 994 F.2d 537, 539 (8th Cir. 1993) (rejecting a defendant's claim that his guilty plea was involuntarily entered, observing "there is nothing in the record to indicate that [the defendant] was not fully in possession of his faculties during the [plea] proceedings" and noting the defendant's "performance during the

plea hearing is inconsistent with his after-the-fact claim that he did not understand the proceeding").

## III.

We reverse the PCR court's findings and reinstate Garren's convictions and sentences.

**REVERSED.**
**BEATTY, C.J., and HEARN, J., concur. FEW, J., concurring in a separate opinion. JAMES, J., concurring in part and dissenting in part.**

**JUSTICE FEW:**  I concur in the result reached by the majority.  I write separately to explain the narrow points of disagreement I have with the majority's analysis.

As to Garren's claim that plea counsel should have sought a mental health evaluation before he pled guilty, I agree with the majority's analysis of the prejudice prong of *Strickland*, and its conclusion that "any claim of prejudice is purely speculative."  However, I disagree with the majority's conclusion that Garren failed to prove deficiency under the first prong of *Strickland*.

I begin with my belief that the PCR court's finding of deficiency was not so narrow as the majority suggests.  The PCR court found "trial counsel should have requested that [Garren] have a psychological evaluation before [he] pled guilty."  In disagreeing with the majority as to deficiency, I am not contending counsel was required to have a "competency evaluation."  Rather, focusing on what I believe was the finding of the PCR court, the issue before us is whether counsel was obligated to get some professional input to assist counsel in understanding how to most effectively defend Garren in light of his obvious mental health issues.

As to the merits of this issue, the evidence supports the PCR court's finding that counsel was deficient in not seeking this assistance.  The majority recites most of this evidence in its excellent and detailed description of the brutality of this crime.  In addition to this evidence, Garren told the victim during the crime sequence he was the Apostle Paul and he baptized her.  Plea counsel stated at the plea hearing that Garren "obviously had some mental problems," and at the PCR trial, "I really wish that we had taken the time to get a psychological evaluation."  The victim's brother told the plea court, "I can only think that a man that would want to do this would have to be mentally disturbed."  In the face of these facts, the PCR court's finding that plea counsel was deficient in failing to seek some input from some professional as to the nature and extent of Garren's obvious mental problems and the role they may have played in the events of those terrible days is amply supported by the evidence.  As the majority states, "This Court will uphold the [factual] findings of the PCR court when there is any evidence of probative value to support them."  *See Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016).

As to Garren's claim that his plea was involuntary, I agree with the majority the PCR court erred as a matter of law in granting relief because the evidence Garren presented the PCR court was legally insufficient.  The standard of proof on this

claim is stated in *United States v. Truglio*, 493 F.2d 574, 578 (4th Cir. 1974)[5]—the applicant must show "that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation . . . ." Initially, the responsibility of determining whether the defendant is pleading guilty knowingly and voluntarily falls to the plea court. *See generally Roddy v. State*, 339 S.C. 29, 33-34, 528 S.E.2d 418, 421 (2000) (explaining that the plea court must ensure a knowing and voluntary plea) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711-12, 23 L. Ed. 2d 274, 279 (1969)); *see also State v. Armstrong*, 263 S.C. 594, 598, 211 S.E.2d 889, 891 (1975). In this case, the record of the guilty plea is devoid of any meaningful dialogue between the plea court and the defendant from which the plea court could have made the required determination. The longest answer Garren gave to any question asked by the plea court was literally, "yes ma'am," except that when asked whether he was satisfied with his lawyer, he added, "I'm most satisfied."

Nevertheless, there is nothing in this guilty plea transcript that indicates an invalid plea. When asked whether he was under the influence of any drugs or alcohol, Garren responded, "No." As the majority points out, plea counsel testified at the PCR hearing he observed nothing unusual about his client at the plea, and Garren appeared to understand what he was doing. Therefore, there was nothing the plea court could have observed that indicated Garren was not pleading guilty voluntarily. On its face, this was a valid guilty plea.

The State has a compelling interest in maintaining the finality of a valid guilty plea. *See Jamison v. State*, 410 S.C. 456, 469, 765 S.E.2d 123, 129 (2014) (stating "a valid guilty plea must be treated as final in the vast majority of cases" and citing *McMann v. Richardson*, 397 U.S. 759, 773, 90 S. Ct. 1441, 1450, 25 L.Ed.2d 763, 775 (1970), for the State's "compelling interests in maintaining the finality of guilty-plea convictions validly obtained"). To overcome this compelling interest, it is the applicant's burden to demonstrate the plea was not valid. Garren testified at the PCR trial that he *might* have taken an *unnamed* medication that *possibly* had *unknown* side effects, as a result of which he did not know what he was doing when he pled guilty. This testimony tells us nothing about the validity of the plea. Even if the PCR court did find the testimony to be credible, the testimony is legally insufficient to support the invalidation of his plea.

---

[5] It is a federal standard, arising under the Due Process Clauses of the Fifth and Fourteenth Amendments. *Anderson v. State*, 342 S.C. 54, 57, 535 S.E.2d 649, 651 (2000).

The Due Process standard set forth in *Truglio* requires more than the applicant's unsupported testimony that he did not know what he was doing when he pled guilty. This is the basis of the Fourth Circuit's reliance on "objective data" in *United States v. Damon*, 191 F.3d 561 (4th Cir. 1999). Under *Truglio* and *Damon*, he must prove—certainly through expert testimony—that specific medication with explained side effects "had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea." *Damon*, 191 F.3d at 565 (citing *Truglio*, 493 F.2d at 578). Because Garren utterly failed to meet this standard of proof, the PCR court erred as a matter of law in granting him relief.

**JUSTICE JAMES:** I concur in part and dissent in part. I agree with the majority's conclusion that the PCR court erred as a matter of law in concluding Garren is entitled to PCR on the ground trial counsel was ineffective in not requesting a competency evaluation.

However, I respectfully disagree with the majority's conclusion that there is no probative evidence supporting the PCR court's factual finding that Garren had established he was under the influence of medication and did not understand the effect of his guilty plea. I believe this Court's standard of review in PCR cases requires us to affirm the PCR court's grant of relief on this ground. *See Smith v. State*, 386 S.C. 562, 565, 689 S.E.2d 629, 631 (2010) ("In reviewing the PCR [court's] decision, an appellate court will uphold the PCR court if any evidence of probative value supports the decision."); *Edwards v. State*, 392 S.C. 449, 455, 710 S.E.2d 60, 64 (2011) ("The appellate court will reverse the PCR court only where there is either no probative evidence to support the decision or the decision was controlled by an error of law."); *Simuel v. State*, 390 S.C. 267, 270, 701 S.E.2d 738, 739 (2010) ("This Court gives great deference to a PCR [court's] findings [of fact] where matters of credibility are involved.").

I agree the facts of this case are disturbing, and the injuries sustained by the victim were horrific. However, these facts have nothing to do with whether Garren's guilty plea was voluntary. Whether the fifteen-year aggregate prison term imposed upon Garren was harsh or lenient and whether he was expecting to plead in front of a different judge are likewise irrelevant to our analysis of the issues before us. The majority cites its perception that the focus of Garren's PCR claim is his displeasure with his fifteen-year aggregate sentence. That may be true, but Garren's motivation in pursuing PCR is something to be considered by the PCR court in its evaluation of all the evidence, not by this Court. Otherwise, we would be weighing evidence, which is not within our province in a PCR case. The PCR court could have easily considered these facts, concluded Garren's overall testimony was not credible, and concluded Garren had not met his burden of proof. However, the PCR court sifted through all the evidence—including Garren's self-serving testimony—and concluded he had proven he did not enter his plea voluntarily.

I must add that many might consider the fifteen-year sentence imposed to be relatively light under the circumstances. Presumably, Garren is aware that if the PCR court's decision is upheld, on remand the kidnapping and weapon charges would be reinstated, the ABHAN charge would return to the indicted greater offense of attempted murder, the CDVHAN charge would remain in place, and he

would be facing a much harsher aggregate sentence than that imposed by the plea court.

 The PCR court found Garren "was under the influence of medication which affected his ability to understand what he was doing on the day of his plea."  The evidentiary support, however slight, for this factual finding is Garren's own testimony at the PCR hearing.  I respectfully disagree with the majority's conclusion that the PCR court did not find Garren's testimony to be credible. While the PCR court did not explicitly state it found Garren's testimony to be credible or not to be credible, the PCR court did note it had the opportunity to observe each witness who testified at the hearing, was able to "closely pass" upon their credibility, and weighed their testimony accordingly.  Garren testified:

> I don't know what kind of medication they was giving me
> in the county [jail].  But they have a way of giving
> medication that's -- they have a bunch of little glasses on
> a tray.  And they just give you medicine.  I don't know if
> they give me the wrong medicine or what they done.  But
> I had a reaction two different times to the medicine they
> give me.

Garren testified he did not know what he was doing when he pled guilty.  Although self-serving, his testimony is still probative evidence to support the PCR court's ruling that Garren's guilty plea was involuntary due to the medication he was given in jail.  *See Davie v. State*, 381 S.C. 601, 613, 675 S.E.2d 416, 422 (2009) (providing that depending on the facts of a case, self-serving testimony may be sufficient).

Because the PCR court granted Garren relief based upon the evidence before it, and because Garren was the only witness who testified he was under the influence of medication and did not understand the effect of his guilty plea, the PCR court undeniably deemed his testimony credible.  I believe Garren's self-serving testimony—believed by the PCR court—constitutes probative evidence in support of the PCR court's ruling that Garren's guilty plea was involuntary due to the medication he was given in jail.

The majority cites *United States v. Truglio* for the proposition that Garren was required to prove to the PCR court "that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights,

and of realizing the consequences of his plea." 493 F.2d 574, 578 (4th Cir. 1974) (quotation marks and citation omitted). That is precisely what Garren established to the satisfaction of the PCR court, the only tribunal in a position to evaluate Garren's credibility on this most crucial issue. In *Truglio*, the Fourth Circuit held the record supported the district court's factual finding that the defendant was "alert and very well possessed of his faculties" at the time he entered his guilty plea. *Id.* at 579. Here, our standard of review requires us to honor the PCR court's factual finding that Garren was *not* well possessed of his faculties at the time of his plea.

The majority relies upon *United States v. Damon* for the proposition that Garren had the burden of presenting objective data to the PCR court establishing the nature and effect of the medications Garren had taken, and that Garren was required to present evidence the medication "had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea." 191 F.3d 561, 565 (4th Cir. 1999). In *Damon*, while entering a guilty plea to a murder charge, the defendant Damon advised the plea court that he was taking an antidepressant drug; his lawyer advised the plea court that one side effect of the drug was impaired judgment. *Id.* at 563. After Damon was sentenced to life in prison, he moved to vacate his plea on the ground that he entered the plea involuntarily due to the medication he was taking. *Id.* The plea court denied the motion. *Id.* Damon appealed, claiming the plea court had a duty, when informed he was taking the medication, to conduct further inquiry into the effect the drug had on his ability to voluntarily enter the plea. *Id.* at 564.

I believe the majority's reliance upon *Damon* is misplaced. The Fourth Circuit's resolution of Damon's appeal was primarily dependent upon its analysis of the plea court's adherence to Rule 11 of the Federal Rules of Criminal Procedure, which admittedly requires inquiry into a pleading defendant's ingestion of medication. The Fourth Circuit concluded the plea court erred in failing to conduct further inquiry into the effect Damon's ingestion of the antidepressant drug had upon the voluntariness of his plea and remanded to the plea court, holding that Rule 11 required such further inquiry. *Damon*, 191 F.3d at 566. In the instant case, Garren's assertion that his plea was involuntary is properly included as part of his claim for PCR, not as part of a motion to vacate his plea for a Rule 11 deficiency. We have never before held or even intimated that a PCR applicant is required to present objective data regarding the properties, combinations, and effects of drugs to establish he did not voluntarily enter a guilty plea. I would hold the PCR court was entitled to rely solely upon Garren's self-serving testimony. If the PCR court had ruled Garren's testimony on this point was not credible and rejected his PCR claim for the very reasons cited by the majority, our standard of review would have

required us to affirm in that instance as well. At the very least, if the majority deems *Damon* to be binding on the point, a remand to the PCR court would be in order, as that was the result ordered by the Fourth Circuit in *Damon*.

In *State v. Rosier*, 312 S.C. 145, 146, 439 S.E.2d 307, 308 (Ct. App. 1993), the defendant pled guilty to assault and battery with intent to kill. Three days later, he moved to withdraw his plea, alleging that when he pled guilty, he was under the influence of Darvocet and Valium to the extent that he was unable to enter a knowing and voluntary plea. *Id.* at 147-48, 439 S.E.2d at 309. The defendant testified at the motion hearing held three days after his plea. *Id.* at 149, 439 S.E.2d at 310. The circuit court denied the motion to withdraw the plea, finding the defendant was not under the influence of his medications to the extent that he did not voluntarily enter his plea. *Id.* In so finding, the circuit court stated it did not believe the defendant's testimony at the motion hearing and concluded the defendant was "faking." *Id.* The court of appeals affirmed, noting the plea judge had the opportunity to observe the defendant at the plea hearing and at the motion hearing. *Id.* The court of appeals—correctly in my view—yielded to the simple premise that "[t]he determination of credibility must be left to the trial judge who saw and heard the witnesses and is therefore in a better position to evaluate their veracity." *Id.*

The majority concludes nothing in the *plea* transcript suggests Garren was "under the influence of drugs or otherwise dispossessed of his mental faculties" at the time of his plea. I submit this is of no consequence. In *Hyman v. State*, 397 S.C. 35, 39, 723 S.E.2d 375, 376-77 (2012), the PCR applicant pled guilty to a drug distribution offense. In his PCR action, the applicant maintained he entered his plea involuntarily because he was not allowed to view the videotape of the alleged drug transaction. *Id.* at 42, 723 S.E.2d at 378. The PCR court concluded the applicant's testimony was not credible and denied relief. *Id.* at 41, 723 S.E.2d at 378. We affirmed, citing *Solomon v. State*, 313 S.C. 526, 443 S.E.2d 540 (1994), for the proposition that an appellate court's deference to a PCR judge's credibility findings is so great that this Court is required to uphold the PCR judge's determination "*even where testimony at [the] PCR hearing was unequivocally contradicted by the trial record.*" *Hyman*, 397 S.C. at 45, 723 S.E.2d at 380 (emphasis added).

I would affirm the PCR court's decision to grant Garren's application for relief.